## LOT CHADWICK

*v.*

## EDWIN CLAPP.

1. MORTGAGE—*equitable lien.* Where the equitable owner of land assents, in writing, that the holder of the legal title to the same may hold the title as security for the payment of money borrowed by such owner, of a third person, this will be sufficient to create an equitable lien on the land for the benefit of his creditor.

2. NOTICE—*rebutting presumption of, from circumstances.* Where circumstances are brought directly home to the knowledge of a purchaser, sufficient to put him upon inquiry, and thus amount to notice, he will be entitled to rebut the presumption of notice which would otherwise arise, by showing the existence of other and attendant circumstances of a nature to allay his suspicions, and lead him to suppose the inquiry was not necessary.

3. Where the circumstances relied on as sufficient to charge a party with notice, by requiring him to make inquiry, may be equally as well referred to a different matter or claim, as to the one he is sought to be chargeable with notice of, they will not be sufficient.

APPEAL from the Circuit Court of Lee county; the Hon. W. W. HEATON, Judge, presiding.

On the 28th day of November, 1855, Jason Clapp and Edwin Clapp, being seized each of the undivided half of certain lands in Lee county, in this State, and said Edwin holding title to a certain other parcel of land in said county, the said Jason executed a deed to one Ruggles W. Clapp, conveying his said undivided interest, which deed was recorded in

the recorder's office in said county ; and on the same day said Edwin and his wife also executed to said R. W. Clapp a deed, conveying to him the other undivided half so held by said Edwin, together with the other land held by him alone, which deed was filed for record in said recorder's office on December 5, 1855.

On January 10, 1868, R. W. Clapp and wife, for the expressed consideration of one dollar, executed to Henry Clapp a quit claim deed of all said premises, which deed was recorded in said recorder's office January 30, 1868. On March 1, 1869, said Henry and wife executed to Lot Chadwick a deed, conveying to him all said premises, for the expressed consideration of $10,000, which deed was recorded in said office March 30, 1869. After R. W. Clapp had filed for record the deed made to him by Edwin Clapp, and before it had been actually recorded, it was, by some person unknown, abstracted from the recorder's office, and was afterwards mutilated by having lines drawn across the signatures.

Chadwick brought this bill in chancery against Edwin Clapp and his wife, praying that the court order said last named deed to be recorded, or require the defendants to make a new one.

Edwin Clapp answered, admitting that Jason Clapp and himself held the title to the lands as security for advances made to Henry, and were to deed to him, or any one selected by him, when the advances should be repaid ; that they were repaid, and he and Jason, at the request of Henry, made the two deeds to R. W. Clapp, and setting up that soon afterwards, R. W. Clapp returned to him the two deeds, saying that they had never been recorded, and that therefore the title still remained in the grantors, Edwin & Jason, and that he, Edwin, was to hold said titles to secure the payment of $2600, advanced by one Ebenezer Clapp to said Henry, which sum the latter was to repay in two years, from July 18, 1856, with interest at ten per cent ; and that November 3, 1866, he, the respondent, loaned said Henry $139 on the

strength of his supposed title to the lands, which money was payable on demand with ten per cent interest; that no part of said sums had been paid except $50 of the $2,600; that, in his belief, Chadwick knew of respondent's interest in the lands, and accepted the conveyance of them from Henry merely to defraud respondent and Ebenezer Clapp. At the same time Edwin Clapp filed a cross-bill, setting up the same matter, and praying that he be decreed to have an equitable lien upon the lands for the payment of the $2600 and the $139, with the interest.

Edwin Clapp is the son of Jason Clapp, and they both resided in Massachusetts, where the latter died October 20, 1869. Ebenezer Clapp resided there at the time the suit was commenced; but at the time of the loan of the $2600 to Henry, he resided in Lee county in this State. Ebenezer was the brother of Jason, and the father of R. W. and Henry Clapp. Henry's wife is Chadwick's daughter, whom he married October 1, 1866.

The court below decreed, under the cross-bill, that Edwin Clapp had a lien on the lands conveyed in the deed from said Edwin to R. W. Clapp, to secure payment of $6790.66, the amount due on the $2600 loan. Chadwick brings the case here by appeal, to reverse the decree.

Messrs. EUSTACE, BARGE & DIXON, for the appellant.

Mr. B. H. TRUESDELL, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The only real controversy in this case is, as to whether there was here any equitable mortgage in favor of Edwin Clapp, and if so, whether Chadwick was a purchaser for a valuable consideration, without notice.

We do not find it necessary to consider whether there was, in fact, a deposit of title deeds as security for a loan of money; nor to decide whether the well established doctrine in

English law, that the deposit of title deeds alone, as such security, will create an equitable lien on the estate, prevails in this State.

We find in the letter of Henry Clapp to Edwin Clapp, of the date of October 2, 1867, the following: "With respect to what I owe my father, there will be no trouble, for you hold in your name, on the records in Dixon, land enough to nearly pay double the amount I am owing him; but I can not rest easy until I have this matter all straightened up and my father paid." We consider that there was here, in writing, an implied assent that the title to this land should be held as security for the payment of the $2600 loan by Ebenezer Clapp to Henry Clapp, which was sufficient to create an equitable lien on the land for the payment.

The assent being manifested in writing, avoids the difficulty which may be supposed to arise under the Statute of Frauds, where there is but a mere deposit of title deeds, or such deposit accompanied with a verbal agreement that the deeds should be held as security.

To prove that Chadwick had notice of this equitable lien, the defendant seems to rely upon the family connection between Chadwick and Henry Clapp—the testimony as to understanding in the neighborhood as to the reported ownership of the land—that Cephas Clapp acted as agent of the land for some one other than Henry Clapp—and what took place at an interview with the witness Arnold, where the claim of Edwin or Jason Clapp was spoken of.

This family connection had existed at the time when Chadwick acquired title, for a little over two years. There was nothing in any associations or confidence shown to exist between the parties, to raise the presumption that they had resulted in Chadwick's acquiring any knowledge as to Henry's dealing with his father.

The neighborhood reports established little more than that, for years before, it had been the understanding through the

community that the title to the property was in "some Clapp East."

This was true as to the legal title, and Henry testifies that he had an object in letting such an understanding prevail, on account of his indebtedness. The proof shows that he had failed in business at the east, and was embarrassed with debt. He had been the equitable owner of the lands ever since their purchase from the United States some years prior to 1855, and had continuously from that time resided on the land, some one else holding the legal title.

To counterbalance any such neighborhood reports, and exonerate the conduct of Chadwick from the imputation of fraud in acquiring the title, are the following facts: Years before, that legal title had been transferred to R. W. Clapp. The deeds had been filed for record, and one of them recorded. About the time they were filed for record, R. W. Clapp executed a mortgage of the land to one McLean, to secure the payment of $6000 for a stock of goods purchased for Henry Clapp. Mr. Ives, an attorney, drew the mortgage, and there was exhibited to him at the time an abstract of the title, signed by the recorder. We must suppose, from the fact of Mr. Ives accepting the mortgage, that the abstract showed a good title of record in R. W. Clapp. This abstract had been exhibited to Chadwick previous to his purchase; and some fourteen months before the purchase, R. W. Clapp and wife had executed to Henry Clapp a deed of the property, describing themselves in the deed as of the city and State of New York.

These were circumstances to allay any suspicion which might have been excited by such neighborhood report, and good faith would not seem to have required that Chadwick should seek out any other persons of the name of Clapp, who might be found at the east, and inquire whether they had any interest in the land.

The note for the $2600 borrowed of Ebenezer Clapp was executed to Jason Clapp and Edwin Clapp, on account, as

alleged, of Ebenezer's incapacity to transact business. In 1860, Jason Clapp and Edwin Clapp, by letter to Henry Clapp, informed him that they had decided to appoint Cephas Clapp their agent of their affairs in Lee county, and referring Henry to Cephas to make any arrangement for occupying the land.

Afterwards, Cephas, to some extent, performed acts of agency and supervision of the property; but we find nothing in the proof sufficient to bring home to Chadwick the knowledge that Cephas was acting as the agent of Jason and Edwin, especially at the time of the purchase; as it may be inferred, from Cephas' testimony, that he had ceased to act as such agent before that time—he testifying that he commenced so acting in 1860, and acted to 1868, which, the beginning of the year 1868, would be fourteen months before Chadwick's purchase.

The witness Arnold, was the agent or owner of the McLean mortgage before spoken of, which had never been satisfied of record, though claimed to have been paid. At an interview which was had between Arnold and Henry Clapp, in the presence of Chadwick, in reference to the adjustment of that mortgage, Arnold testifies that mention was made of the Edwin Clapp or Jason Clapp claim, and Chadwick remarked that he did not care anything about that claim; that he did not consider it worth any thing; and this is relied on as actual notice.

But the mention of that claim was general, without its being in any manner particularized what it was; and as Edwin had a good claim of title, as appeared of record, to a portion of the land, and the signatures of both Edwin and Jason to their deeds to R. W. Clapp had been defaced by drawing ink lines through them, Chadwick might have had reference to Edwin's and Jason's claim to the land arising from these circumstances. On this occasion Arnold exhibited the abstract of title which he had in his possession,

before referred to as shown to Ives, when he drew the McLean mortgage.

In view of the whole evidence upon the subject, we regard it as of a nature too vague and indefinite to affect Chadwick with notice of this equitable lien upon the land. There had been no information of it communicated to him sufficiently definite to enable him to ascertain whether it was authentic. We do not perceive that such circumstances were brought to his knowledge that were sufficient to put him on inquiry, or that, in view of them, his conduct was tainted with fraud in taking the title. In the editor's note to the case of *Le Neve* v. *Le Neve*, on pages 156, 157, vol. 2, pt. 1, Leading Cases in Equity, where this subject of notice is fully treated, it is said : " Where circumstances are brought directly home to the knowledge of the purchaser, which would have been sufficient in themselves to put him on inquiry, and thus amount to notice, he will be entitled to rebut the presumption of notice, which would otherwise arise, by showing the existence of other and attendant circumstances of a nature to allay his suspicions, and lead him to suppose the inquiry was not necessary."

Whatever presumption of notice might be thought to arise from the circumstances in evidence, we would regard it as having been sufficiently rebutted in the manner above named.

With regard to Chadwick being a purchaser for a valuable consideration, Chadwick and Henry Clapp testify that the entire consideration, the sum of $10,000, was paid by Chadwick to Clapp, and the details as to how and when it was paid are fully given ; that $2150 were paid in Lee county bonds and money, some $1100 in satisfaction of judgments which were liens upon the land, and other sums for back taxes, and debts of Henry Clapp, making in all about $4000 actually paid ; that the residue of the consideration, some $6000, was paid by the surrender of notes, made by Henry, and past due, which he had given to Chadwick for moneys advanced by the latter at different times. Mr. Bodine, the

justice of the peace who drew the deed to Chadwick, and was present at its execution, gives corroborative testimony as to the payment of the $2150 in bonds and money. Chadwick appears to have been a man of means, and of sufficient ability to have, from time to time, advanced the money claimed to have been represented by the promissory notes.

There is nothing to bear against this testimony except surmises and suspicions as to the good faith of the notes, and the parting with the ownership in the bonds and money paid at the time.

This distrust of the testimony arises from the proof that Henry Clapp was deemed in the neighborhood to be of doubtful pecuniary responsibility ; that his habits were not good, and his refusal to disclose as to the disposition which he had made of the bonds, and of the money for which the notes had been given.

We can well see that Chadwick might have furnished money to his daughter's husband, and without security, when but for such relation. he would not have done so. Henry Clapp's reticence as to the disposition made of the money, may be accounted for by the fact of the existence of his old pecuniary embarrassments.

Chadwick testifies that the money was advanced from time to time, to be used in the purchase of lands in the newer and more western States. And because of the reason above suggested, Henry Clapp may have been disinclined to tell where his investments were.

We regard Chadwick as appearing, from the evidence, to be a purchaser for a valuable consideration.

Some stress is laid upon inadequacy of consideration, as affording a presumption of fraud in the purchase. The value of the land was variously estimated by witnesses at from $25 to $45 per acre. The price paid was about $20 per acre. It was a cash purchase. The title was embarrassed by a mortgage in favor of McLean, made by R. W. Clapp in 1855, for some $6000.

It is true, that it was claimed to be satisfied, but it remained unsatisfied upon the record, and the witness Arnold, who claimed to represent the mortgage, was, at a time before the purchase, trying to effect a compromise of the mortgage with Henry Clapp. The mortgage was a cloud upon the title, and may, to some extent, have depreciated its value.

We can not regard the alleged inadequacy of price as marking the transaction with bad faith.

The decree will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*