## GEIGER v. RYAN.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

1. MARRIAGE—CEREMONIAL MARRIAGE—COHABITATION AND REPUTATION.

Defendant in 1867 married before a justice of the peace a woman who had formerly lived with and had children by another man; no marriage ceremony having ever been performed between them. In 1871 defendant remarried her before a Catholic priest. She and defendant lived together continuously and openly as man and wife, and passed and were known as such for 36 years, until her death in 1903. The man with whom she had formerly lived died about 1885. *Held*, that their open cohabitation after the death of the man with whom she had formerly lived under the ceremonial marriages rendered their relation, during that period at least, that of husband and wife.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Marriage, § 16.]

2. DESCENT AND DISTRIBUTION—CLAIM AS SURVIVING HUSBAND—SETTLEMENTS AND CONVEYANCES BETWEEN DISTRIBUTEES.

After a marriage ceremony between defendant and a woman who had previously lived with and had children by another man, they lived together continuously and openly as man and wife, and passed and were known as such until after the death of the man with whom she had formerly lived, for 36 years, and until her death. *Held*, that even if defendant was not her widower, by reason of her previous cohabitation with such other man constituting a marriage, his claim that he was her widower, and had been her husband from the time of their marriage, was a legal basis for a claim by him of a widower's interest in her property, and a release by her children to him as her administrator and conveyances by them to him in settlement of her estate should not be set aside on the ground that his claim was false and fraudulent.

Hooker, J., dissenting.

*Appeal from Special Term, Kings County.*

Action by Caroline F. Geiger, sometimes known as Caroline F. Pettengill, against Roger Ryan. Judgment for plaintiff, and defendant appeals. Reversed.

In June, 1867, the defendant, a Catholic, was married by a justice of the peace in Chicago, Ill. The woman he married was not a Catholic. She afterwards joined his faith, and they were married again in a Catholic church by a Catholic priest in St. Louis, Mo., in June, 1871. From the time of their said first marriage they lived together continuously and openly as man and wife and passed and were known as such to all for 36 years, viz., until she

died intestate in January, 1903, in Brooklyn, N. Y., where they had resided for about 30 years. The deceased woman owned a lot of land in Brooklyn at her death, and also some personal property. The defendant obtained letters of administration on her estate as her husband.

The following facts were also proved: The said deceased lived and cohabited with a man named Daiton in the city of New York prior to 1867, and had three children, namely, the plaintiff, another daughter and a son, who are claimed to be by the said Daiton, and are all still alive; one of the daughters being the plaintiff. No marriage ceremony was ever performed between the deceased and Daiton. They separated in or about 1867, and the deceased afterwards went to Chicago and was married to the defendant, as stated above. Daiton died in 1884 or 1885, i. e., about 18 years before she died. The plaintiff lived with the defendant and the deceased and was brought up by them.

After taking out letters of administration, the defendant claimed one-third of the personalty as widower of the deceased, and also a widower's estate by the curtesy in her real estate. She had a child by him in 1868 who died in 1870. She acquired title to the real estate in 1901. He divided two-thirds of the personalty among the said three children of the deceased, and also paid to each $334.87 as their interest in the real property, for which they gave him a general release, and conveyed to him the real property.

This plaintiff, one of the said daughters of the deceased, afterwards repudiated the said settlement, tendered back the money so paid to her, and brought this action to set aside the said general release and conveyance, on the ground that the defendant's statement that he was widower of the deceased was false and fraudulent. There is no finding of fact that the actual value of the said real or personal estate was greater than that on which the distribution and conveyance were made. There is a finding of fact that at the time of the marriage of this defendant and the deceased, she was the wife of Daiton by her cohabitation with him, from which the conclusions of law are drawn that the defendant was not her widower and thereby entitled to share in her estate, and that his statements to the contrary were false, and deceived the plaintiff.

Argued before HIRSCHBERG, P. J., and HOOKER, GAYNOR, RICH, and MILLER, JJ.

F. A. McCloskey, for appellant.
Louis Wertheimer, for respondent.

GAYNOR, J. The learned trial judge stated at the close of the case that he would not stigmatize the plaintiff and the other two children of the deceased by Daiton as illegitimate; that he "would take advantage of the presumption of law and find that it" (i. e., the relation between the deceased and Daiton) "was a matrimonial relation," although no ceremony of marriage was ever performed between them. It was not at all necessary to decide the said children illegitimate in order to give judgment for the defendant. He had married the deceased before a civil magistrate in 1867, and again in a Catholic church by a priest in 1871, she having changed to his faith, and lived with her as his lawful wife for 36 years after such civil marriage until her death in 1903. Meanwhile Daiton, with whom the deceased had lived and cohabited prior to 1867, had died in 1885. The undisputed evidence of the open cohabitation of the defendant and the deceased as husband and wife after Daiton's death, i. e., until her death, under the said ceremonial marriages, amply sufficed to prove that their relation during that period, at all events, was that of husband and wife, and that he was her lawful widower. This being the case, the finding of the plaintiff's legitimacy,

i. e., that the deceased and Daiton were husband and wife up to the time of his death in 1885, by reason of their cohabitation prior to 1867, in no way clashes with the fact that the deceased was the defendant's lawful wife at least after Daiton died in 1885. Other than the finding of fact that the defendant was not the widower of the deceased, the judgment has nothing to stand on. And even if he was not her widower, his claim that he was, and also that he was her husband from the time of their marriage, based as it was on the two ceremonial marriages, and a continuous matrimonial life with her of 36 years, was in good faith and not fraudulent, as alleged in the complaint and found, and therefore served as an honest and legal basis for his claim and receipt of a widower's interest in the property of the deceased.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the event.

RICH and MILLER, JJ., concur. HIRSCHBERG, P. J., not voting.

HOOKER, J. (dissenting). This is an action to set aside a deed and release on the ground of fraud. The facts as found by the learned trial court are that the plaintiff's father and mother were married and of the issue the plaintiff is one of the children; that the plaintiff's mother abandoned her father, went to Chicago, and was married to the defendant by a justice of the peace and within about a year the child Harriet, was born to the defendant and plaintiff's mother; that the child died at about the age of two years, and within a year or so after that, in 1871, the defendant and the plaintiff's mother were married in St. Louis by a Catholic priest; that the plaintiff's father died about the year 1884; that since the two ceremonial marriages between the defendant and the plaintiff's mother they have lived together as man and wife continuously, and were so living at the time of the death of plaintiff's mother in January, 1903; that the defendant, claiming to be the widower of the plaintiff's mother, procured letters of administration on her estate and claimed to be entitled to a tenancy by the curtesy in the real property she left and to his share as widower in the personalty; that he represented to the plaintiff that he was such widower, and on the basis of such representation she, relying upon it, procured the plaintiff's consent to the settlement of her mother's estate upon a plan which would have been correct had he been the widower and entitled to curtesy, but which were in fraud of her rights, if he was not widower. On these facts the learned trial court directed judgment for the plaintiff, and the defendant appeals.

The attack is upon the findings of fact in relation to the marriage of the plaintiff's mother to these two men. Naturally the first inquiry is whether the defendant was the widower of the plaintiff's mother. There is no direct evidence that plaintiff's parents were ever married; but there is evidence that they lived together as man and wife, had three children, and that the plaintiff's mother went as his wife, was known among the neighbors as such, and the children bore their father's name. This family condition existed several years at least.

The presumption is that the plaintiff's parents were actually married. Gall v. Gall, 114 N. Y. 109, 118, 21 N. E. 106. If the plaintiff's parents were actually married, and not divorced, and her father was still living at the time of the marriage ceremonies between the defendant and the plaintiff's mother, the marriage between them was void ab initio, and their relations were meretricious, and not matrimonial. But there is no proof of such a divorce, and certainly it cannot be presumed (Clayton v. Wardell, 4 N. Y. 236); and there is proof that the plaintiff saw and visited her natural father after the ceremony in St. Louis, and that he died about 1884. The relations between the defendant and the plaintiff's mother commenced as meretricious, and, although they lived together for many years and were reputed to be man and wife, the presumption that they were actually married does not arise, in the absence of at least some proof that at some time after the death of plaintiff's father, when they could lawfully be married, there was an intent on their part to change the character of their relationship. The record contains no evidence from which a change of their relationship could be presumed after the death of her husband in 1884. It seems to me, therefore, entirely clear from this record that the defendant was not the widower of the plaintiff's mother.

Upon the question of fraud, the defendant better than any person else knew the true relationship that existed between him and the plaintiff's mother after the death of the plaintiff's father, and especially did he know this better than the plaintiff. It seems to me apparent that she relied upon his representation, and that she had a right to do so.

The judgment appealed from should be affirmed, with costs.