HOUSTON OIL CO. OF TEXAS v. GRIGGS.*
(No. 14.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 2, 1915. Rehearing Denied Jan. 6, 1916.)

1. MARRIAGE ☞22—COMMON-LAW MARRIAGE —PROOF OF.

Where a man and woman, whose marriage was not prohibited, maintain the relationship of husband and wife, holding themselves out to the world as such, there is a valid common-law marriage.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 16; Dec. Dig. ☞22.]

2. STATUTES ☞220— CONSTRUCTION—LEGISLATIVE CONSTRUCTION.

Contemporaneous and practical interpretation and construction of statutes by the Legislature should be deferred to by the courts.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 298; Dec. Dig. ☞220.]

3. MARRIAGE ☞1 — CONSTRUCTION—DUTY OF COURT.

It is the policy of the law and judiciary to look upon the marital relation, whether statutory or common-law, with great liberality, in an endeavor to sustain the legality of such relationship.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 1; Dec. Dig. ☞1.]

4. MARRIAGE ☞10—RELATIONSHIP—PARTIES ENTITLED TO CONTRACT.

Under Act Dec. 21, 1836 (Laws of Republic 1836–39, p. 192, § 35), prohibiting a marriage between a man and his son's wife, a man could marry his son's widow prior to the amendment of August 28, 1858, declaring that no man shall marry his son's widow; there being, prior to the amendment, no impediment, in view of legislative construction, either to a ceremonial or common-law marriage between such parties.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 28; Dec. Dig. ☞10.]

5. HUSBAND AND WIFE ☞262 — COMMUNITY ESTATES—PRESUMPTION.

Where it appeared a grantee was a married woman at the time of the execution of the deed,

there is a presumption that a community estate would arise.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 913, 914; Dec. Dig. ☞262.]

**6. VENDOR AND PURCHASER ☞230—DEEDS—NOTICE—RECITAL.**

The recitals in a deed only charge a party with notice of such facts as the words or condition import.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 502–512; Dec. Dig. ☞230.]

**7. VENDOR AND PURCHASER ☞229 — BONA FIDE PURCHASER—NOTICE.**

Notice sufficient to deprive a purchaser of the defense of bona fides must be of such a nature as to have reasonably excited the suspicions of a reasonably cautious man.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. ☞229.]

**8. VENDOR AND PURCHASER ☞229 — BONA FIDE PURCHASERS—NOTICE.**

What is notice, or constructive notice sufficient to deprive a purchaser of the defense of bona fides, depends upon the particular circumstances of the case.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. ☞229.]

**9. VENDOR AND PURCHASER ☞227, 229 — BONA FIDE PURCHASER—NOTICE—"MRS."**

A deed to a woman, who conveyed the land to plaintiff, contained no recital showing that she was at that time married. Recitals were also absent in the deed from the woman to plaintiff prepared by her attorney in fact. The certificate of acknowledgment of the power of attorney recited that Mrs. E. O. G., known to be the person whose name was subscribed, personally appeared before the notary public. *Held* that, as the word "Mrs." merely showed that the woman had at some time been married, it did not constitute either actual notice, which embraces all those instances in which positive personal information is directly communicated, or constructive notice, wherein the communication of the notice is conclusively presumed, that the woman, at the time she received the conveyance, was a married woman, and that the land was part of her community estate, in which defendants, her children, were entitled to share.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 474, 477–494; Dec. Dig. ☞227, 229.

For other definitions, see Words and Phrases, First and Second Series, Mrs.]

Error from District Court, Newton County; A. E. Davis, Judge.

Trespass to try title by the Houston Oil Company of Texas against R. H. Griggs and others. There was a judgment in favor of the named defendant, and plaintiff brings error. Reversed and rendered.

H. O. Head, of Sherman, and Parker & Kennerly and H. O. Head, of Houston, for plaintiff in error. Forse & Hamilton, of Newton, for defendant in error.

CONLEY, C. J. This was an action of trespass to try title, brought by the appellant, Houston Oil Company of Texas, against J. S. Griggs, Marion Griggs, and R. H. Griggs, for the recovery of 220 acres of land,

a part of the Sampson Watson 320-acre survey, granted by the state of Texas to Sampson Watson on February 8, 1859. The petition is in regular form for suits of that nature. The case was tried by the court, without the intervention of a jury, and judgment was rendered for the appellant for only 137½ acres, and in favor of the defendant R. H. Griggs for 82½ acres; the other two defendants in the original suit having disclaimed. The appellant excepted to the judgment of the court in not awarding it the full amount of the land sued for, to wit 220 acres, and perfected its appeal, and the suit is now properly before this court.

The trial court filed findings of fact and conclusions of law, which are as follows:

### Findings of Fact.

In compliance with the request of the plaintiff, filed herein, for findings of facts and conclusions of law, the court makes and files the following:

(1) I find that on the 8th day of February, 1859, the state of Texas patented to Sampson Watson a survey of 320 acres of land, same being patent No. 999, volume 17, and said patent being issued by virtue of a pre-emption certificate issued to said Sampson Watson.

(2) I find that on October 15, 1859, Sampson Watson and wife conveyed said 320-acre tract of land to Elizabeth O. Griggs, of Newton county, Texas, for the recited consideration of $125 cash.

I find that on April 16, 1890, Elizabeth O. Griggs executed a power of attorney to C. E. Smith, of Newton county, Texas, authorizing said Smith to sell and convey 220 acres of said Sampson Watson survey, described in said power of attorney by metes and bounds, and being the same 220 acres of land in controversy in this suit, and being the west 220 acres of said 320-acre Sampson Watson survey, which power of attorney was witnessed by F. N. Griggs.

I find that the certificate of acknowledgment to said power of attorney describes said Elizabeth O. Griggs as *Mrs.* Elizabeth O. Griggs, and that said certificate was otherwise in form the certificate of acknowledgment provided by law to be used to attest the acknowledgment of a woman not under coverture, and that in the body of the deed the name of the grantor appeared simply Elizabeth O. Griggs.

I find that under said power of attorney the said 220 acres of the Sampson Watson survey, being the land in controversy herein, was conveyed by and through a regular chain of conveyances to the plaintiff, Houston Oil Company of Texas; said 220 acres being described by metes and bounds in all the deeds composing said chain of conveyances.

(3) I find that in the year 1857, and for a number of years prior thereto, there lived in Wardville, Walton county, Florida, a man by the name of Berry Griggs, Sr.; that some 15 to 18 years prior to 1857 said Berry Griggs, Sr., was legally married to a woman by the name of Polly Cottonhead, by whom he had several children, among which children were Wm. Griggs, Mitchell Griggs, and Berry Griggs, Jr.; that said William Griggs grew to manhood in Florida, prior to 1857, and was married to a woman whose maiden name the record does not disclose, but whose name, after her marriage to said William Griggs, was Elizabeth O. Griggs; that said William Griggs died, and the wife of Berry Griggs, Sr., died; and that after their death said Berry Griggs, Sr., father of said William Griggs, and said Elizabeth O. Griggs, widow of William Griggs, lived and cohabited

together and had children born to them in Florida.

I find that said Berry Griggs, Sr., and Elizabeth O. Griggs bore the relationship to each other of father-in-law and daughter-in-law, and that said Elizabeth O. Griggs and Berry Griggs, Sr., were never married by license and ceremony in said state of Florida.

(4) I find that in the latter part of the year 1857, or the early part of the year 1858, said Berry Griggs, Sr., and Elizabeth O. Griggs fled from the state of Florida to escape prosecution for living and cohabiting together without having been married, and that they left Florida in the night and came to Texas, bringing with them two children of said Berry Griggs, Sr., by his first wife, viz. Berry Griggs, Jr., and Mitchell Griggs, and also bringing with them two children of said Berry Griggs, Sr., by Elizabeth O. Griggs, viz. Lee Griggs and Frank Griggs.

(5) I find that these parties reached Newton county, Texas, in the spring of the year 1858, and settled and made their home in said Newton county, Texas, and lived and resided on said Sampson Watson survey, after same was acquired by said Elizabeth O. Griggs.

(6) I find that after reaching the state of Texas said Berry Griggs, Sr., and Elizabeth O. Griggs continued to live and cohabit together as man and wife, and raised a family of children in Newton county, Texas, and that said Elizabeth O. Griggs was held out by said Berry Griggs, Sr., as his wife, and that there were born to them seven children after they reached Newton county, Texas, making a total of nine children in all born to them.

(7) I find that said Berry Griggs, Sr., and Elizabeth O. Griggs lived together, as hereinbefore stated, as man and wife, up until the year 1881, when said Berry Griggs, Sr., died, leaving surviving him two children by his first marriage with Polly Cottonhead, which children were Berry Griggs, Jr., and Mitchell Griggs, and eight children by Elizabeth O. Griggs; one of the children by Elizabeth O. Griggs having died prior to the death of said Berry Griggs, Sr.

(8) I find that Berry Griggs, Sr., and Elizabeth O. Griggs, because they could not marry in Florida, moved to Texas.

(9) I find that the defendants herein have adduced before me no testimony as to the law of the state of Florida, at the time Berry Griggs, Sr., and Elizabeth O. Griggs began to live and cohabit together, and during the time of their living together in said state of Florida, on the question of whether or not there could have been a valid common-law marriage in said state of Florida between said parties.

(10) I find that the defendants herein, and those through whom they claim, have not had peaceable, continuous, and adverse possession of the land in controversy herein for any sufficient length of time or in a sufficient manner to mature title in them under either the three, five, or ten year statutes of limitation of the state of Texas.

(11) I find that the defendant R. H. Griggs has acquired all the title to the land in controversy herein held by six of the eight children of said Berry Griggs, Sr., and Elizabeth O. Griggs, who survived said Berry Griggs, Sr.

I find that at her death, which occurred subsequent to the year 1890, the said Elizabeth O. Griggs died intestate as to the 100 acres of said Sampson Watson 320-acre survey remaining after her sale of 220 acres of land in controversy herein by her attorney in fact to Jas. E. Price, and that after her death the children of said Berry Griggs, Sr., by Elizabeth O. Griggs, appropriated said 100 acres to their own use and benefit, sold same, and received and used the proceeds thereof.

Conclusions of Law.

1. I conclude that the burden of proof herein was upon the defendants, holding the equitable title derived through inheritance of the community estate of their deceased father, Berry Griggs, Sr., to six-eighths of one-half of the land in controversy herein, to show that the plaintiff, Houston Oil Company of Texas, and those under whom it holds, were not innocent purchasers of the land in controversy herein as against said equitable title derived by inheritance of the community estate, and I conclude that said burden of proof has been met by defendants herein when it was shown that the certificate of acknowledgment to the power of attorney from Elizabeth O. Griggs to C. E. Smith describes said Elizabeth O. Griggs as *Mrs.* Elizabeth O. Griggs, and that this description of said Elizabeth O. Griggs was sufficient to put the predecessor in title of the plaintiff herein on notice that said Elizabeth O. Griggs had been or was at the time of the acknowledgment a married woman, which notice, if followed up by inquiry, would have resulted in the ascertainment of the fact that said Elizabeth O. Griggs had been the wife of Berry Griggs, Sr., and that she at that time had children as the fruit of her common-law marriage with the said Berry Griggs, Sr., which children were entitled to the community interest of said Berry Griggs, Sr., in the land in controversy herein, and that there is no other testimony in the record, except the certificate of acknowledgment hereinabove referred to, tending to put the plaintiff herein and its predecessors in title on notice as to the claim of the defendants herein, and those under whom he claims.

2. I conclude that the defendant herein has no title to the land in controversy under and by virtue of the three, five, or ten year statutes of limitation of the state of Texas.

3. I conclude that under the law of the state of Texas, as it existed when Berry Griggs, Sr., and Elizabeth O. Griggs reached the state of Texas, a marriage between said Berry Griggs, Sr., and Elizabeth O. Griggs was not prohibited by the laws of the state of Texas; the only prohibition in the law in force at that time, on said subject, being the act of December 31, 1836, prohibiting marriage between a man and his son's *wife*, but that said statute did not prohibit marriages between a man and his son's *widow*, such as was the relationship between Berry Griggs, Sr., and Elizabeth O. Griggs, and that there could therefore be a valid common-law marriage between Berry Griggs, Sr., and Elizabeth O. Griggs.

4. I conclude that the defendant R. H. Griggs has shown title to six-eighths of one-half of the 220 acres of land in controversy herein, or 82½ acres; that judgment should be rendered that the plaintiff herein take nothing as against the defendant R. H. Griggs as to an undivided 82½ acres of the 220-acre tract in controversy herein.

5. I conclude that the plaintiff, Houston Oil Company of Texas, has shown the legal title to 137½ acres of the 220 acres of land in controversy herein to be in itself, and that it is therefore entitled to judgment against the defendant R. H. Griggs for an undivided 137½ acres of land in controversy, together with all costs of suit.

Under appellant's first four assignments of error, the judgment of the court is attacked in concluding that a common-law marriage existed between Berry Griggs, Sr., and Elizabeth O. Griggs, and that the property acquired by Elizabeth O. Griggs in 1859 was therefore community property.

[1] The court's findings to the effect that Berry Griggs, Sr., and Elizabeth O. Griggs, before they came to Texas, were living together in the state of Florida, and had several children born to them before they left that state, and that when they immigrated to Texas they continued such relationship, and

lived together as husband and wife, and had born to them a number of other children, is based upon the undisputed evidence, and is not in any way attacked by any of the parties to this suit. Under these conditions, unless Elizabeth O. Griggs and Berry Griggs, Sr., were precluded from marrying each other by the laws of Texas when they came here, they would be husband and wife, under the rules governing common-law marriages.

[2-4] The question to be determined, therefore, is: Did the laws of Texas in 1857, when they came to this state, forbid the marriage of a man to his son's widow? The trial court found that the laws of Texas did not, at that time, prohibit the marriage of a man to his son's widow, in that the law of that period only prohibited the marriage of a man to his son's *wife*, and the statute, therefore, did not include a son's widow, and that the law so remained until the act of August 28, 1858, when it was amended to include specifically, the son's widow.

It is evident that the legislative body of the state recognized that the statute, as it was written prior to the enactment of August 28, 1858, did not include within its terms a son's widow, for the amendment specifically changed the law to so include the widow; the wording of that amendment being, "No man shall marry * * * his son's widow." This is rather a fine distinction, and doubtless in the original act, when it was passed, it was thought by the Legislature that the wife would include the widow also; but, as is evidenced from the subsequent action of the Legislature, a different conclusion was reached, that body recognizing a defect in the law in that respect, and changing it accordingly. Contemporaneous and practical interpretation and construction of statutory provisions by the legislative department in their enactment of laws necessarily has great weight with the judiciary, and such practical construction and interpretation will be followed by the courts, if it can be done without doing violence to the fair meaning of the words used. 8 Cyc. 735.

The record in this case shows that Elizabeth O. Griggs and Berry Griggs left the state of Florida to keep from being criminally prosecuted. The relationship of husband and wife, to all intents and purposes, in so far as the consent of the parties was concerned, and their acts in holding each other out to the world, constituted in every respect a marriage relationship, excepting the performance of a formal ceremony. It is quite reasonable to suppose, therefore, that Berry Griggs and Elizabeth O. Griggs, when they left the state of Florida, were seeking an asylum in some commonwealth where their relationship was not illegal. This relationship continued to exist from the time they landed here in 1857 until the death of Berry Griggs in 1881. A number of children were born to them in this state. They reared a family, and in so far as this record shows no question was ever raised, through all that period of years, affecting the legitimacy of their relationship or of their children.

It seems that it has been the purpose and intent of our laws, and of the judiciary construing them, to always look upon the marital relationship, whether statutory or common-law, with great liberality, in an effort to sustain the legality of such relationship. Chief Justice Gaines, in writing upon this question, used the following language:

"When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proofs, the law raises a presumption of its legality, not only casting the burden of proof upon the party objecting, but requiring him throughout and in every particular plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void. The strength of the presumption increases with the lapse of time to which the parties are cohabiting as husband and wife. It being for the highest good of the parties, of the children, and of the community that all intercourse between the sexes in form matrimonial should be such in fact, the law, when administered by enlightened judges, seizes upon all probabilities, and presses into its service all things else, which can help it in each particular case to sustain the marriage, and repel the conclusion of unlawful commerce." Nixon et al. v. Wichita Land & Cattle Co., 84 Tex. 408, 19 S. W. 560.

There are many other decisions, both of this state and other states, indorsing the principle above expressed, and sanctioning the view that such relationship, as is shown to exist in the instant case, should be considered with great liberality, and, wherever it is possible so to do, to solve all doubt affecting the matrimonial relationship in favor of sustaining such relationship. Morgan v. Morgan et al., 1 Tex. Civ. App. 315, 21 S. W. 154; Grigsby v. Reib, 105 Tex. 597, 153 S. W. 1124, Ann. Cas. 1915C, 1011; Yates v. Houston, 3 Tex. 433; Babb v. Carroll, 21 Tex. 766; Lewis v. Ames, 44 Tex. 345; Routh v. Routh, 57 Tex. 589; Gall v. Gall, 114 N. Y. 109, 21 N. E. 106; Rose v. Clark, 8 Paige (N. Y.) 574; Matter of Schmidt, 42 Misc. Rep. 463, 87 N. Y. Supp. 463; Geiger v. Ryan, 123 App. Div. 722, 108 N. Y. Supp. 13.

We think the authorities above cited warrant the holding that there was no legal impediment in the laws of Texas in 1857, when Elizabeth O. Griggs and Berry Griggs, Sr., immigrated here, which prohibited the consummation of a common-law marriage, and that the facts and circumstances in the record show that such a consummation was effected, and that a common-law marriage existed between the said parties. Therefore assignments of error 1 to 4, inclusive, are overruled.

[5-9] In its sixth assignment of error, the appellant contends:

"That the court erred to the prejudice of the plaintiff in rendering judgment in favor of R. H. Griggs for any of the land sued for, for that, even if it was shown that there was a valid marriage between Elizabeth O. Griggs and Berry Griggs, Sr., existing at the time the land

in controversy herein was acquired by Elizabeth O. Griggs from Sampson Watson and wife on October 15, 1859, said Elizabeth O. Griggs was, by deed from Sampson and wife, invested with the legal title to the land in controversy herein, and even if said land was community property between said Elizabeth O. Griggs and Berry Griggs, Sr., it was incumbent upon the defendant R. H. Griggs to show that the plaintiff herein, Houston Oil Company of Texas, had, at the time it purchased the land in controversy herein, notice, actual or constructive, of the equitable rights of said R. H. Griggs, and the children of Elizabeth O. Griggs and Berry Griggs, Sr., under whom he claims the land in controversy herein, and the burden of proof was on the defendant R. H. Griggs to affirmatively show such notice, which burden of proof was not met and discharged by showing that in the certificate of acknowledgment made by T. H. Goode, notary public, before whom Elizabeth O. Griggs acknowledged power of attorney to C. E. Smith, which power of attorney is a link in this plaintiff's chain of title to the land in controversy, that said Elizabeth O. Griggs was described as *Mrs.* Elizabeth O. Griggs, since there was nothing in the body of the deed, nor with certificate thereto, to indicate that Elizabeth O. Griggs was at that time or had ever been a married woman, and since the certificate of acknowledgment of Elizabeth O. Griggs to said power of attorney, as made by said notary public, was in form such certificate of acknowledgment as, was required by the law of the state of Texas at that time for the acknowledgment of a feme sole. The description of said Elizabeth O. Griggs in such certificate of acknowledgment as *Mrs.* Elizabeth O. Griggs was insufficient to put this plaintiff, or any of its predecessors in title, on inquiry as to whether or not said Elizabeth O. Griggs was, at the date of the execution and acknowledgment of said power of attorney, a widow, having children, or of the fact of a prior marriage between said Elizabeth O. Griggs and Berry Griggs, Sr., and the existence of children who are the result of such union; and the acknowledgment of said power of attorney being insufficient to charge or fix this plaintiff or any of its predecessors in title with such notice, or put them on such inquiry, plaintiff herein was therefore an innocent purchaser for value of the land and premises in controversy, and as such innocent purchaser entitled to protection, and the court should have rendered judgment in favor of plaintiff, and against the defendant R. H. Griggs, for all of the land in controversy."

No question is raised in the record that the appellant, Houston Oil Company of Texas, is not an innocent purchaser for value, and without notice of any of the secret equities of the appellee, except in so far as it was charged, by the use of the word "Mrs." in said certificate of acknowledgment, with constructive notice of such equities. This question is, therefore, to be solved upon the effect of the use of the word "Mrs." in said certificate to charge such notice.

Elizabeth O. Griggs acquired the land in question on October 15, 1859, under a deed from Sampson Watson and wife; said deed reading:

"Have granted, given, bargained, sold, released and conveyed, and by these presents do grant, give, bargain, sell, release, convey and confirm, unto the said Elizabeth O. Griggs, her heirs and assigns, forever, all that tract or parcel of land, etc., * * * and all the benefits and appurtenances thereunto belonging or in any wise appertaining unto her, the said Elizabeth O. Griggs, and to her heirs and assigns,

forever, * * * and do truly warrant and forever defend her, the said Elizabeth O. Griggs, in the quiet and peaceable possession of the premises herein."

On April 16, 1890, Elizabeth O. Griggs executed to C. E. Smith a power of attorney to grant, bargain, sell, and convey the 220 acres in controversy; said power of attorney being in the following language:

"* * * I, Elizabeth O. Griggs, of the state of Texas, county of Newton, made, constituted, and appointed, and by these presents do make, constitute, and appoint C. E. Smith, of Burkeville, Texas, my true and lawful attorney, for me and in my name, place, and stead, to grant, bargain, sell, and convey the following described parcel of land, etc., * * * and for me and in my name to make, execute, acknowledge, and deliver good and sufficient title for the same, with or without covenants of warranty, giving and granting to my said attorney full power and authority to do and perform all and every act necessary to be done in the premises. * * *"

This instrument is signed *Elizabeth O. Griggs.* The certificate of acknowledgment on this power of attorney reads:

"State of Texas, County of Newton.

"Before me, T. H. Good, a notary public, on this day personally appeared *Mrs.* Elizabeth O. Griggs, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office this 16th day of April, A. D. 1890.

"T. H. Good, Notary Public,
"Newton Co., Texas."

On the 26th day of April, C. E. Smith, acting under said power of attorney, sold and conveyed the land to James E. Price for a recited consideration of $650. That deed reads as follows:

"* * * That I, Elizabeth O. Griggs, of the county of Newton and state aforesaid, for and in consideration of the sum of $650 to me in hand paid by James E. Price, have this day, by and through C. E. Smith, my attorney in fact, duly constituted by a power of attorney dated April 16, 1890, granted, sold, and conveyed, and by these presents do grant, sell, and convey, unto said James E. Price all that certain tract or parcel of land," etc.

Said deed is signed, "Elizabeth O. Griggs, by Her Agent and Attorney in Fact, C. E. Smith." There is nothing in the record, or on the face of these instruments, of any kind or character that would charge notice of any adverse claims, unless, as contended by appellee, and as found by the court, the use of the word "Mrs." before the name of Elizabeth O. Griggs, in the certificate of acknowledgment to the power of attorney, has that effect.

The doctrine of notice, and the distinctions between "actual" notice, "implied" notice, and "constructive" notice, is technical in the extreme, and there is much confusion among the decisions and text-writers on those subjects. Perhaps the clearest discussion of the matter is that given by Mr. Pomeroy in his admirable work on Equity. He says:

"'Actual' notice embraces all those instances in which *positive personal information* of a matter is directly communicated to the party,

and this communication of information, being a fact, is established by evidence *directly* tending with more or less cogency, to its proof. 'Constructive' notice includes all other instances in which the information thus directly communicated cannot be shown, but the information is either conclusively presumed to have been given and received from the existence of certain facts, or is implied by the prima facie presumption of the law, in the absence of contrary proof." Section 594.

"Within the meaning and rules, notice may, I think, be correctly defined as the information concerning a fact actually communicated to a party by an authorized person, or actually received by him from a proper source, or else presumed by law to have been acquired by him, which information is regarded as equivalent in its legal effect to full knowledge of the fact, and to which the law attributes the same consequences as would be imputed to knowledge. It should be carefully observed that the notice thus defined is not knowledge, nor does it assume that knowledge necessarily exists." Section 594.

"It is admitted by all text-writers and by many judges that much confusion and inaccuracy of language are exhibited in the decisions concerning 'actual' and 'constructive' notice; notices are not infrequently called 'constructive,' which are really actual, and the rules governing the two are confounded. If the party has knowledge or information of facts sufficient to put him upon inquiry, has often been treated as peculiarly the characteristic of constructive notice. In truth, however, this test is equally applicable to every instance of actual notice conferred by process of rational deductions from circumstances in evidence. The distinction, however, is plain, and natural. *In all cases of constructive notice there is no evidence which directly tends to show that any information of the prior conflicting claim was personally brought home to the consciousness of the party affected; the particular facts of which he is shown to have knowledge do not directly tend to show such information; but from these facts the legal presumption arises, either conclusive or rebuttable, that the information was received.* In all cases of actual notice inferred from circumstantial evidence, the facts proved do directly tend to show that information of the prior conflicting claim was *personally* brought home to the consciousness of the party. The court or jury infers from the facts proved, by a process of rational deductions, *but without the aid of any legal presumption, that such information was actually received.*" Section 596.

The notice in the instant case, and relied upon to sustain the judgment, is, in its nature, "constructive" notice. It is not contended that the appellant, or its predecessors in title, had any information of the prior conflicting claim of appellee, which was personally brought home to their consciousness, or that there were any particular facts of which they, or either of them, had knowledge, which tended to such information, but that a legal presumption arises, ipso facto from the use of the adjective "Mrs." in the notary's certificate, that there was an outstanding latent or secret equity in the land conveyed by Elizabeth O. Griggs, of which appellant must be presumed to have had information.

The word "Mrs." is the only circumstance in the whole chain of title which, by inference or otherwise, can be urged to charge notice of such claim. When all of the instruments in the chain of title are regular and

in proper form, will this three-letter description of the granting party in the certificate of acknowledgment be such in itself as to put a reasonably prudent person upon notice of any outstanding conflicting claims in the title?

There is nothing in the laws of Texas that restricts or prohibits a "Mrs.," so long as she is a feme sole, from conveying and transferring a fee simple or lesser title to lands. She has the same freedom and authority in that respect as the male members of the human family have. When the certificate of acknowledgment to an instrument is single in form, and there is no other fact or circumstance, other than the descriptive word "Mrs." in said certificate before the name of the acknowledging party, connected with the chain of title of a nature to excite suspicion, what prompting of reasoning would urge an ordinarily cautious man to think there was something which might give rise in such conveyance to an exception to the power of the "Mrs." to ordinarily do what the law authorized her to do, if she was a feme sole?

If there was an intimation anywhere in the chain of title that Elizabeth O. Griggs was a married woman at the time of the execution of the deed to her in 1859, we would be confronted with a different proposition. Then a presumption that the estate was community would arise. Hardy Oil Co. v. Burnham, 124 S. W. 221. The deed to her of that date is without recitals of any kind showing that at the date of the conveyance she was under coverture, and such instrument is entirely free from any such suspicion. The recitals in a deed only charge a party with notice of such facts as the words or condition import. Cooke v. Bremond, 27 Tex. 457, 86 Am. Dec. 626. The word "Mrs.," used in connection with the name of the grantor, Elizabeth O. Griggs, only charged the purchaser with notice that at some time during her lifetime she was a married woman. That is all the word itself means.

The doctrine of constructive notice, as appellee seeks to apply it in this case, is harsh in its nature. It has no root in personal information or knowledge, but must find its support upon a legal presumption. A merge vague allusion to something which may or may not lead to an interest in the property ought not, under the circumstances of this case, be accepted by the court as a predicate for the application of a doctrine so austere in its nature. It has been held that, where the circumstances relied upon as sufficient to charge a party with notice may equally as well be referred to some other matter as the one with notice of which he is sought to be charged, they will not be deemed to be sufficient. 29 Cyc. 115; Chadwick v. Clapp, 69 Ill. 119. The circumstances known to the purchaser ought to have been of such a nature as to have reasonably excited the suspicions of a reasonably cautious man.

College Park Electric Belt Line Co. v. Ide, 15 Tex. Civ. App. 273, 40 S. W. 64; 29 Cyc. 1115.

It is impossible to define by a single formula what will amount to notice sufficient to affect the party receiving it, and neither the courts nor the text-writers have undertaken to lay down any such formula. Each case must depend, to a considerable extent, upon its own particular circumstances. Section 602, Pomeroy on Equity. However, we feel that the suit of Veatch v. Gilmer, 111 S. W. 747, a decision by the Court of Civil Appeals, in which a writ of error was granted by the Supreme Court (Gilmer v. Veatch 102 Tex. 384, 117 S. W. 430), and the judgment of that court reversed, is by analogy in point. In that case John Alfred Veatch and others, heirs of John A. Veatch, brought suit against A. Gilmer and others in trespass to try title to 1,349 acres in the Kennard league in Sabine and Newton counties. This land was the community property of John A. Veatch and his deceased wife, who died in 1845. John A. Veatch lived until 1870. He left six children, all having been born of his said wife, and among those children was the appellant, John Alfred Veatch, and Samuel H. Veatch. John Alfred Veatch executed a power of attorney to Samuel H. Veatch "to do any lawful act for and in my name, as if I were present." Acting under this power of attorney the said Samuel Veatch sold the entire interest of the heirs of John A. Veatch, including the interest of John Alfred, the plaintiff, in the Kennard league of land. The deed conveying the land under said power of attorney for and on behalf of the appellant read as follows:

"* * * Have granted, sold, and conveyed, and by these presents do grant, sell, and convey, unto Allen Veatch, of the county of Sabine, Texas, all that certain tract or parcel of land situated in Sabine county, Texas, about 15 miles southeast from the town of Hemphill; the same being *all the right, title, and interest we have as heirs at law of John A. Veatch, deceased, in the W. S. Kennard league of land in Sabine county, Texas.*"

It was contended by the appellant in that case that the deed which the attorney made purported to convey only the principal's interest as an heir of John A. Veatch, his father, and not the interest he inherited from his mother. The trial court, in his conclusions of law, held:

"I conclude that the purchase by the defendant of the property from the heirs, after the death of both the husband and wife, makes them purchasers with notice of the interest of the wife in the community property, and for that reason they are not innocent purchasers, for value, without notice; but otherwise I would find them to be purchasers in good faith, for value, without notice of the title of the wife."

Upon this question the Court of Civil Appeals held:

"The deed purported to convey the interest appellant had in the land as an heir of John A. Veatch, deceased. By this deed defendants had notice of the relationship which constituted appellant an heir of John A. Veatch, the original owner. The deed did not recite that he was a son; but, as such was the fact and constituted his heirship, defendants were charged with knowledge of it. This fact would suggest to purchasers, exercising ordinary care, that John A. Veatch, the father, was a married man, and that the property might have been community property of that marriage. Being thus put upon inquiry as to such conditions, defendants, in the absence of some showing of diligence, would 'be charged with knowledge of the fact that they were dealing with community property of appellant's father and mother.'"

The Supreme Court, in reversing and reforming this conclusion, said:

"The cross-assignment [of error] asserts that the court erred in not holding that the deed of John Alfred Veatch, by his attorney in fact, Samuel H. Veatch, did not convey the equitable title inherited from his mother in the land, and in not decreeing that the vendee in such deed was an innocent purchaser of that interest. The agreed statement is 'that the defendants own all the land in suit, the title to which has never passed out of the heirs of John A. Veatch, and that they acquired the property in good faith, for value, holding proper deeds therefor.' But the Court of Civil Appeals held that, by reason of the fact that the deed purported to convey John A. Veatch's interest as an *heir*, this apprised the purchaser of the fact that he was a son, and that his father had been a married man, and that the property may have been acquired in the lifetime of his mother. It seems to us that this is pushing the doctrine of notice too far. There was nothing upon the face of the deed to indicate that at the time it was executed John A. Veatch had a wife then living, so there is nothing on the face of the papers to give notice of that fact. We are unable to discern any fact in the case that should have put the purchasers of the land upon notice that Mrs. Veatch was living at the time the land was acquired by her husband, John A. Therefore we are of the opinion that, instead of recovering of John A. Veatch 111 acres of the land, the defendant should have recovered 222 acres; and accordingly the judgment will in that respect be reformed."

Likewise, in the instant case, there is nothing upon the face of the deed to Elizabeth O. Griggs to indicate that at the time it was executed Elizabeth O. Griggs was a married woman and had a husband living, and so there is also nothing on the face of the papers to give notice of that fact. We, too, are unable to discern any fact in the case that should have put the purchaser of the land upon notice that Berry Griggs, Sr., the husband of Elizabeth O. Griggs, was living at the time the land was acquired by the wife.

To hold that, when the purchaser saw the word "Mrs." before the name of Elizabeth O. Griggs, it was apprised that at the time the deed to her was executed in 1859 that she was married to a man by the name of Berry Griggs, Sr., that of her union with him there were born eight children, that the husband since died, and that the eight children inherited the undivided one-half interest, his part of the community, and that at the time of the conveyance of Elizabeth O. Griggs, 30 years afterwards, under her power of attorney of the land to Price, that such interests were an outstanding equity, is push-

ing the doctrine of constructive notice farther than we think it ought to go. It is placing a quality of mind in the "ordinarily prudent" man equal to that of the gifted Shakespeare, who, "having seen a leaf and a drop of water, could construct the forests, the rivers, and the seas, and see all the cataracts fall and foam, the mists rise, and the clouds form and float," and this quality of mind we believe out of harmony with the practical side of conveyancing of land.

The sixth assignment of error is sustained.

Under our view of the case, it will not be necessary to consider appellant's other assignments of error.

The judgment of the lower court is therefore reversed, and judgment here now rendered for the appellant for the 220 acres of land originally sued for.