ODOM, Justice.
 

 Defendant appealed from a judgment ordering him to convey by deed to plaintiff certain real property in the city of Shreveport. Plaintiff’s demand is founded upon a written contract entered into between her and defendant on January 1, 1923, under the terms of which defendant bound and obligated himself to sell to plaintiff a certain lot" and all improvements thereon; the consideration to be $3,381.87.
 

 The contract recites that plaintiff paid defendant $585 cash on the day it was signed and that the balance should be paid in monthly installments of $40 each. It further provides that when the sum of $1,300 shall have been paid to apply on the purchase price of the lot “W. W. Jones agrees to make complete and guaranteed title to said lot and accept mortgage notes payable within 1, 2, 3, 4, 5, 6 and 7 years for the remaining sum due and unpaid.”
 

 The contract is printed, in skeleton form, in a passbook, the blanks being filled in with pen and ink, and is signed by the parties. The last clause of the contract reads as follows: “All payments to be made to W. W. Jones at 303 Ward Building or 703 Hope Street, Shreveport, La., who will enter and sign for each payment in this pass bobk.”
 

 Plaintiff alleged that she had fully complied with her contract by paying the entire purchase price, together with 8 per cent, interest on all deferred payments, which payments had been accepted and receipted for by the defendant, who now refused to execute the deed as called for by the contract. She prayed that he be ordered to perform his obligation.
 

 Defendant excepted to the petition on the ground that plaintiff was without capacity or authority to” bring the suit for the alleged reason that she is the wife of Joe Honoré, now living; that Joe and Fannie Honoré are married and living together under the community regime; and that Joe, being head and master of the community, is the proper one to bring the suit. After hearing the evidence on the exception, the trial judge overruled it.
 

 The defendant then answered setting up various defenses which are in substance that the payments were not made in strict accordance with the terms of the contract; that notwithstanding the fact that the name of Fannie Honoré appears in the contract, Joe Honoré is the real party in interest, Fannie being a
 
 *114
 
 party interposed, and that deiendant had advanced to said Joe Honoré various and considerable sums of money and that some of the payments noted in the passbook were intended to apply to this debt made by Joe Honoré, and not on the contract relating to the sale of the property; that on April 30, 1929, the said Fannie and Joe Honoré requested a statement showing the balance due on the contract and that the same was furnished showing quite a large balance due; and that both Joe and Fannie approved the statement by subsequently making payments in accordance therewith. Alleging that there was still a balance of $3,-618.99 due him, defendant in the alternative prayed for judgment in reconvention against the plaintiff in that sum.
 

 1. The exception filed would be good if Joe and Fannie Honoré were married and living together as husband and wife under the community régime. But they are not married. They are now and have been living together in concubinage for nearly forty years. They began to live together in Texas in the year 1894 or 1895, where one child was born to them. About 1896 or 1897 Fannie left Joe and went to Shreveport, La., carrying the child with her. Joe followed her three months later, and they again began to live together and have done so ever since. Three children were born to them in Shreveport, and these, as well as the one born in Texas, have taken the name of the father. Fannie goes by the
 
 »
 
 name of Honoré. Joe has been heard to refer to Fannie as his wife and Fannie to refer to Joe as her husband. While on the witness stand Fannie was asked, “Who is Joe Honoré?” and she said: “That is my husband.” On being asked if the money used in paying for the lot was made by her and Joe while living together as man and wife, she said: “Yes, sir.” In certain deeds and mortgages filed in the record, they are referred to as-husband and wife. Defendant says he always understood that they were married and that he dealt with them as if they were. Apparently they held themselves out to the community as husband and wife.
 

 From these circumstances there arises a strong presumption that they were married. But that presumption must yield to positive-testimony to the contrary. Joe and Fannie both say they were never married, and counsel for defendant concede that there was never any ceremonial marriage between them, either in this state or in Texas. But counsel contend that these parties became husband and wife in Texas under common-law rules which prevail in that state, and that the status which they acquired there must be recognized by the courts of this state.
 

 It is true that if Joe and Fannie became husband and wife in Texas, under common-law rules, while they were both citizens of that state, they did not lose that status on coming to this state. Gibbs v. Illinois Cent. R. Co., 169 La. 450, 125 So. 445.
 

 Common-law marriages are recognized in the state of Texas. But Joe and Fannie Honoré were not married in that state according to common-law rules. Under the laws of Texas as announced by its highest courts, there can be no common-law marriage unless the man and the woman mutually agree to become husband and wife. When they do so agree and follow up the agreement by living together and cohabiting and hold themselves out to the world as husband and wife, the
 
 *116
 
 status thus acquired has all the binding force and effect of a ceremonial marriage. The jurisprudence of Texas is settled to the effect, however, that there must be consent and intent to marry, without which their living together" and cohabiting and holding themselves out as husband and wife does not constitute marriage. Houston Oil Co. of Texas v. Griggs (Tex. Civ. App.) 181 S. W. 833; Griggs v. Houston Oil Co. (Tex. Com. App.) 213 S. W. 261; Bobbitt v. Bobbitt (Tex. Civ. App.) 223 S. W. 478; Grigsby v. Reib, 105 Tex. 597, 153 S. W. 1124, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011, and voluminous notes to the case; Berger v. Kirby, 105 Tex. 611, 153 S. W. 1130, 1131, 51 L. R. A. (N. S.) 182; Walton v. Walton (Tex. Com. App.) 228 S. W. 921; Bell v. Southern Casualty Company (Tex. Civ. App.) 267 S. W. 531.
 

 In Berger v. Kirby, supra, the court said:
 

 “A common-law marriage exists when a man and woman enter into an agreement to become husband and wife, and, in pursuance of such agreement, do live together and cohabit as husband and wife, and hold each other out to the public as husband and wife.”
 

 In the case at bar there was.never any final agreement between Joe and Fannie to become husband and wife. This is shown by the positive testimony of both. On the 2d day of December, 1895, Joe Honoré obtained a marriage license from the county clerk of Harris county, Tex., to marry Fannie Hall. But the marriage was never solemnized, and the certificate was réturned by Joe on February 24, 1896. Joe evidently wanted to marry Fannie, but Fannie refused. She testified that Joe wanted to marry her and even went so far as to take out a marriage license, but that he had certain habits of which she did not approve, and that whereas she was willing to live with him she wanted to be free to leave him at any time if she wished. We quote her testimony as recorded at page 189 of the record: “Well, we kept it (meaning the marriage license) thirty days and during that time I found that Joe had faults that I did not like so I did not feel like marrying him.” She was asked: “You thought it better to continue to live with him without the formality of marriage?” And she answered: “Well, I thought I was free and could leave if I wanted to.”
 

 Joe Honoré, when asked whether he and Fannie were married after he obtained the marriage license, said: “No. Me and her had a little argument once in a while and she decided she would not marry, so I taken them (the license) back and had them canceled.”
 

 The trial judge correctly held that these parties were not married according to the common law of Texas.
 

 2. On the merits, plaintiff has made out her case. All payments made on the contract were to be entered in the passbook. The contract, which is printed in the passbook, so provides. In addition to the $585 paid at the time the contract was made, the passbook shows payments made between January 6, 1923, and June, 1932, amounting to $4,011, or a total of $4,596 paid on the qpntract. Defendant admits that he personally received and credited these payments in the book. As the sale price was only $3,381.87, the payments credited in the book together with the down payment are sufficient to discharge not only the $3,381.87, but all interest. We do
 
 *118
 
 not understand that this is disputed. But •defendant says that some of the items credited in the passbook were not intended to be applied on the purchase price of the property, but by agreement were to be imputed to an •open account which he had against Joe Honoré. Both Joe and Fannie dispute this. They say that all the payments were made on the contract. In view of the express terms of the contract that all payments thereon were to he made to defendant, “who will enter and sign for each payment in this pass book,” and in view of the testimony of both Joe and Fannie Honoré that they intended that all of them should apply on the contract, we think defendant is bound by the entries which he made in the book and attested by signing with his initials, “WWJ.”
 

 The testimony leaves us in no doubt that defendant advanced to Joe Honoré at various times considerable sums. There is in the record an itemized statement made by defendant showing the amounts advanced. It shows that on October 30,1926, he advanced 1720.59 “excess over price in the construction of brick building corner Anna and Sycamore Streets.” In 1927, he made five payments on an automobile each for $57.25. On November 30 of that year he made payment on note at the bank amounting to $220. The statement shows three payments to a bank aggregating $442. It shows fivé payments to a bank in 1928 aggregating $371. Besides these there are innumerable smaller items listed. But defendant testified that each of these amounts was advanced to Joe Honoré and not to Fannie. These items are listed on one general account which shows not only the amounts due by Joe, but also the amounts due by Fannie Honoré on the real estate contract. In other words, defendant is now seeking to hold Fannie responsible not only for the payments due on the contract, but for the amounts due by Joe as well, and claims that many of the payments listed in the passbook were intended to be imputed to Joe Honore’s account. On being asked with whom he had the agreement to impute these payments to Joe’s account, he said, “With Joe Honoré.” Joe disputes this and says that all the payments noted in the passbook were intended to be credited on the “house and lot” account.
 

 Defendant cannot be allowed to charge the debts due by Joe Honoré to Fannie Honoré and thereby defeat her right to enforce the contract to sell. He says that his dealings with reference to the property were with Joe, and that although Fannie’s name appears in the contract, she was a party interposed. If true, that is no valid defense to this suit. Joe Honoré is making no protest. On the contrary, he testified that the property should be conveyed to her.
 

 It is argued by counsel that the contract was breached by the failure to make payments regularly as therein provided. If he had thought the contract was breached on that account, he should have taken advantage of the breach at the time it occurred. Instead of doing so, he continued to accept payments down to 1932. His acceptance of the later payments was an acknowledgment that the contract was still in force.
 

 The judgment appealed from is affirmed.