Linda Kay NEWBERRY, Appellant,

v.

Charles T. TARVIN, Appellee.

No. 1458.

Court of Civil Appeals of Texas,
Corpus Christi.

Jan. 24, 1980.

Richard D. Esper, Esper & Esper, El Paso, for appellant.

Paul Q. O'Leary, O'Leary, Sanchez & Benton, Brownsville, for appellee.

OPINION

BISSETT, Justice.

This is a medical malpractice case. Linda Kay Newberry, plaintiff, appeals from a summary judgment rendered in favor of Dr. Charles T. Tarvin, defendant. The trial court's judgment is based upon a determination that plaintiff's action is barred, as a matter of law, by Tex.Rev.Civ.Stat.Ann. art. 5526 (1958), the two-year statute of limitations.

Suit was filed on July 3, 1978. In summary, plaintiff alleged: she first consulted defendant in November, 1973, who diagnosed her condition as "Asherman's Syn-

drome" (cervical or uterine adhesions); he treated her condition by the insertion of an intrauterine device (IUD) into her body; in November, 1974, she went to defendant's office for the removal of the IUD; defendant then hospitalized her and performed a "D & C," but did not locate the IUD; defendant suggested that plaintiff be x-rayed to determine the location of the missing IUD, but three days later told her that the same would not be necessary; defendant prescribed valium for pain; plaintiff, in June, 1976, again consulted defendant about her condition; defendant referred her to a urologist, who found no abnormality in her urinary tract; the urologist referred her to a Dr. Fox, who found a "questionable IUD palpable outside of the uterus"; Dr. Fox, on June 29, 1976, hospitalized plaintiff, located the IUD and removed the same from plaintiff's body. Plaintiff further alleged that defendant was negligent in several particulars including, among other allegations, the following: in failing to properly insert the IUD; in failing to properly supervise plaintiff's condition during the use of the IUD to determine whether such treatment was successful following his diagnosis of her ailment; in failing to discover whether the insertion of the IUD "could, in fact, relate to her continuing problem"; in failing to locate and remove the IUD; and, in failing to conduct her treatment "in a medically correct method as an ordinary prudent doctor of medicine would have."

Defendant, in both his original answer and in his motion for summary judgment, alleged that plaintiff's cause of action, if any, arose on the date that Dr. Fox surgically removed the IUD (June 29, 1976), and because plaintiff did not file this suit until July 3, 1978, her action was barred by the two-year statute of limitations. Plaintiff controverted the motion for summary judgment.

The only summary judgment evidence before the trial judge consists of an affidavit, signed by plaintiff, which, in pertinent part, reads:

"In November of 1973, Dr. Tarvin inserted an IUD (intrauterine device) into me for a treatment of a condition he diagnosed as Asherman's Syndrome. In November of 1974, I went back to Dr. Tarvin's office to have my IUD removed. He admitted me to Valley Baptist Hospital for a D & C and performed said operation on November 22, 1974. He did not locate the IUD, he told me that x-rays should be taken to locate the IUD. Three days later, when I called Dr. Tarvin, he told me I didn't need x-rays because he believed the IUD had been removed or had 'dissolved' itself.

In June of 1976, I again complained to Dr. Tarvin of pain, he referred me to a urologist. The urologist, after finding nothing abnormal in my urinary tract, referred me to Dr. Fox. Dr. Fox located the IUD, which was located in my stomach, and removed it on June 29, 1976. However, because of pain and other illnesses, I remained in the hospital, and under constant sedation until July 22, 1976.

It was after I was released that I continued to have abdominal pains and headaches, as well as vomiting and fever. When I moved to El Paso, Texas, in November of 1976, I was still suffering from these pains, and in January of 1977, I went to a Dr. Ramon who performed surgery at Eastwood General Hospital for my problem with adhesions.

It wasn't until after my July 22, 1976, release that I realized that the IUD had traveled from my uterus into my abdomen and was causing all my pain and suffering."

The first question to be determined is whether the "discovery" rule applies in the disposition of this case.

The rule was first applied to a medical malpractice case in *Gaddis v. Smith*, 417 S.W.2d 577, 580 (Tex.Sup.1967), which held:

"Causes of action based upon the alleged negligence of a physician in leaving a foreign object in his patient's body are proper subjects for the 'discovery rule.' . . . we hold that the cause of action

for the negligent leaving of a foreign object in a patient's body by a physician accrues when the patient learns of, or, in the exercise of reasonable care and diligence, should have learned of the presence of such foreign object in his body . . . "

Our Supreme Court, in *Weaver v. Witt*, 561 S.W.2d 792, 793–794 (Tex.Sup.1977) stated:

> "The *discovery rule* referred to may be stated as the legal principle that a statute of limitations barring prosecution of an action for medical malpractice runs, not from the date of the practitioner's wrongful act or omission, but from the date the nature of the injury was or should have been discovered by the plaintiff. . . " (emphasis in original).

■ The rule as originally applied in *Gaddis v. Smith*, supra, was expressly limited "to causes of action in which a physician leaves a foreign object in the body of his patient." The rule has since been extended to apply to medical malpractice cases other than "foreign object" cases. See *Hays v. Hall*, 488 S.W.2d 412 (Tex.Sup.1972), [failure of a vasectomy operation]; *Weaver v. Witt*, supra, [negligently performed operation]; *Grady v. Faykus*, 530 S.W.2d 151 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.), [excessive treatment with x-rays]; *Conerly v. Morris*, 575 S.W.2d 633 (Tex.Civ.App.—Austin 1978, writ ref'd n. r. e.), [negligent treatment for a fibroid tumor]. All of the aforesaid cases are analogous to the case at bar. Accordingly, plaintiff's cause of action accrued when the nature of her injury was discovered by her, or, in the exercise of reasonable care should have been discovered by her, rather than upon the date of the operation, or upon the date of the alleged wrongful acts and omissions causing her injury. We hold that the discovery rule is applicable to this case, and we so apply it.

The next question to be answered is whether the summary judgment proof establishes, as a matter of law, that plaintiff's suit was barred on July 3, 1978, the date it was filed. We answer the question in the negative.

Defendant, in support of his contention that plaintiff's suit was barred by limitations on the date it was filed, relies, in part, upon *Robinson v. Weaver*, 550 S.W.2d 18 (Tex.Sup.1977), where the Court refused to apply the discovery rule to an action based upon a medical doctor's misdiagnosis. That reliance is misplaced. Here, the action is not based on misdiagnosis.

■ The true purpose of summary judgment is the elimination of patently unmeritorious claims or untenable defenses. *Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex.Sup. 1972). Thus, summary judgment should be granted, and if granted should be affirmed, only if the record establishes the absence of any genuine issue of fact and the right of movant to judgment as a matter of law. *Farley v. Prudential Insurance Company*, 480 S.W.2d 176 (Tex.Sup.1972); *Collins v. New*, 558 S.W.2d 108, 109 (Tex.Civ.App.— Corpus Christi 1977, no writ).

■ The burden of proof is on the movant for summary judgment, and all doubts as to the existence of a genuine issue of material fact are resolved against him. *Parrott v. Garcia*, 436 S.W.2d 897 (Tex.Sup. 1969). When a movant fails to controvert his adversary's summary judgment evidence, that evidence must be accepted as true on appeal. *Railroad Commission v. Sample*, 405 S.W.2d 338 (Tex.Sup.1966).

■ Where there is a question relating to the true meaning of a vital statement of fact contained in an instrument offered as summary judgment proof, or where it is ambiguous, a summary judgment is improper. *Dixon v. Shirley*, 558 S.W.2d 112 (Tex. Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *Chapa v. Benavides Mill & Gin Company*, 420 S.W.2d 464 (Tex.Civ.App.—San Antonio 1967, writ ref'd n. r. e.).

■ When summary judgment is sought by a defendant on the ground that the plaintiff's cause of action is barred by limitations, the burden is on the movant to conclusively establish the bar of limitations. *Zale Corporation v. Rosenbaum*, 520 S.W.2d 889 (Tex.Sup.1975).

While it is conclusively established that plaintiff was aware of internal pain more than two years prior to July 3, 1978, when this suit was filed, the summary judgment proof does not establish, as a matter of law, that plaintiff knew, or, in the exercise of reasonable care and diligence, should have known, prior to that date, that her pain was caused by the presence of the IUD in her body. There is no evidence that Dr. Fox, or any other person, ever told plaintiff that Dr. Fox, on June 29, 1976, discovered that the IUD was still in plaintiff's body and was the cause of her injury. All that is shown by the record is that plaintiff, sometime *after* July 22, 1976, "realized" that the IUD had caused "all" her "pain and suffering."

It is further conclusively established by plaintiff's uncontroverted affidavit that, at all times pertinent to this appeal, plaintiff was under *constant sedation*. There is no evidence of the extent of the effect, if any, the sedatives had upon her ability to comprehend any information which might have been given to her prior to July 3, 1976, concerning the cause of her injury. Defendant did not offer any summary judgment proof.

Defendant failed to establish the defense of limitations as a matter of law and was, therefore, not entitled to summary judgment. The summary judgment evidence reflects the existence of a genuine issue of material fact as to whether plaintiff discovered the cause of her injury before July 3, 1976, or, in the exercise of reasonable care and diligence, should have discovered it prior to that date.

The judgment of the trial court is REVERSED and the cause is REMANDED to the trial court for reinstatement on the docket and for trial.

YOUNG, J., not participating.