Faye Louise WYNN, Appellant,

v.

MID–CITIES CLINIC, J. Natcher Stewart, Robert L. Nelson and Mid-Cities Memorial Hospital, Inc., Appellees.

No. 9012.

Court of Appeals of Texas, Texarkana.

Dec. 22, 1981.

Rehearing Denied Jan. 26, 1982.

John Gano, Gano & Houssiere, P.C., Houston, for appellant.

William Dixon Wiles, Bailey, Williams, Westfall, Lee & Fowler, Dallas, for appellees.

BLEIL, Justice.

Faye Wynn appeals from an instructed verdict granted against her in this medical malpractice action. She sought recovery based on the primary negligence of Dr. Robert L. Nelson in administering excessive x-ray radiation causing serious injuries. We reverse and remand for a new trial because the evidence raised fact questions which should have been submitted to the jury.

■ On appeal from an instructed verdict we view all the evidence and inferences therefrom in the light most favorable to appellant. *Collora v. Navarro*, 574 S.W.2d 65 (Tex.1978); *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649 (Tex.1976). When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury. *Najera v. Great Atlantic & Pacific Tea Co.*, 146 Tex. 367, 207 S.W.2d 365 (1948). And we must indulge every proper inference from the evidence against the trial court's action in withdrawing the case from the jury. *Echols v. Wells*, 510 S.W.2d 916 (Tex.1974); *Adams v. Slattery*, 156 Tex. 433, 295 S.W.2d 859 (1956). With these guidelines in mind, we turn to the facts developed during the trial.

This suit was brought against Drs. J. Natcher Stewart and Robert Nelson, Osteopaths who specialize in surgery and radiology, respectively; Mid-Cities Clinic; and Mid-Cities Memorial Hospital, Inc. During the relevant times Dr. Stewart owned the clinic and was the primary stockholder of the hospital, a private corporation. Dr. Nelson was an employee of the clinic and hospital. In October of 1967, Faye Wynn was referred to Dr. Stewart for evaluation of the lump in her right breast. Dr. Stewart's examination of Mrs. Wynn confirmed the existence of the lump. On November 5, she was admitted to the hospital for testing. When biopsy results revealed that the growth was cancerous, he performed a radical mastectomy. After surgery he referred her to Dr. Nelson for radiation therapy.

Dr. Nelson planned a course of treatment to deliver approximately 4,000 rads, a unit of radiation dosage measurement, to the supraclavicular area, the right shoulder and arm; and about 3,500 rads to the mediastinum area. These dosages were administered in twelve separate treatments, three weekly over a one month period. The twelfth and final radiation treatment was given to Faye Wynn on December 15, 1967, the last time Dr. Nelson saw Mrs. Wynn in a professional capacity.

Since 1967, Faye Wynn has survived with no evidence of recurring cancer. However, she has experienced other disabling complications and ten hospitalizations since that time. The radiation administered to her by Dr. Nelson did cause injuries to the right shoulder area, including destruction and deterioration of the collar bone and the first five ribs; alteration of her skin, muscles, blood vessels, and nerves to a leather-like fibrotic consistency with cracking and ulceration, collapse of her right chest wall, and loss of use of her arm. Appellees concede that the radiation caused her injuries but deny the existence of any evidence that the treatment was excessive.

Dr. Stewart testified that in prescribing x-ray radiation dosage, the physician is to prescribe enough radiation to destroy cancer cells, but not so much that it destroys major normal cells. The cancer cells are more susceptible to destruction by x-ray radiation than are normal cells, so that it

takes less radiation to destroy the cancerous cell than it does a normal cell. He also stated radiation is dangerous and must be carefully controlled and that a doctor should not give too little, nor too much radiation. In following Faye Wynn as a patient, Dr. Stewart said that her radiation burns did not manifest themselves for about eight years and indicated that he himself did not definitely diagnose her post-operative problems as being radiation caused until May, 1976. From the time of the x-ray radiation treatments in 1967, through the last time Dr. Stewart saw Mrs. Wynn as a patient in 1979, no doctor ever told her that her problems were due to radiation or excessive radiation.

Dr. Nelson testified that the job of a radiologist is to administer enough radiation to destroy cancer cells, but not so much to destroy normal tissue. Dr. Nelson's records indicated that he administered 4,080 rads to the supraclavicular area.

Jack Morgan, a radiological physicist, who has worked with determining patient dosage for radiation treatment for about thirty years, testified he calibrates x-ray equipment and is able to make calculations and computations to determine, under given circumstances, what dosage of radiation a patient would receive from the machine used to administer the radiation to Faye Wynn. He calculated the number of rads actually given to the supraclavicular area to be 5,052, or 26% more than that prescribed by Dr. Nelson.

■ The thrust of the motion for instructed verdict and crux of the appellees' argument on this appeal is that Faye Wynn failed to present any evidence of probative force showing that the defendants had departed from any standard of care in the treatment rendered and failed to show causation. *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779 (1949), contains a clear statement of the law in Texas:

"... a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries."

Although a plaintiff still has the burden to prove by expert medical evidence what a reasonable medical practitioner of the same school and same or similar community, under the same or similar circumstances, would have done, this burden can be met by use of a defendant doctor's own testimony. *Wilson v. Scott*, 412 S.W.2d 299 (Tex.1967). In *Williams v. Bennett*, 610 S.W.2d 144 (Tex.1980), it was again held that a doctor can, by his own testimony, establish the requisite standard of medical care by which his actions are judged. In that case, Dr. Bennett, the defendant, testified that it would be bad medical practice to dismiss a patient during the course of a virulent infectious process. He went on to say that when he had dismissed the patient her infection was not active. However, lay testimony showed that there was an active infection at the time of her discharge. The Supreme Court, in reversing a judgment notwithstanding the verdict, held that there was sufficient evidence to support the jury finding that the plaintiff was negligently discharged from the hospital by Dr. Bennett. The evidence here is strikingly similar to the type present in *Williams v. Bennett*, supra.

■ The testimony of the appellee doctors establishes a standard of care—that standard being to give just the right amount of radiation to kill the cancerous cells but not so much that the normal cells are harmed. Dr. Nelson himself gave the following specific testimony on this matter:

"Q. Your basic responsibility to her in performing that treatment was to see she got the right amount of rads, no more and no less, right?

"A. Yes sir.

* * * * * *

"Q. It would not be proper practice, then, as a radiologist, to administer to her more than a proper dosage or excessive radiation, would it.?

"A. You are right."

With the standard of care being established, we turn to whether there was any evidence that the standard was not met.

Dr. Nelson testified that the proper dosage to the supraclavicular area would be 4,000 rads, yet by his own testimony he administered 4,080. Jack Morgan calculated that Dr. Nelson actually administered 5,052 rads of x-ray radiation or 26% in excess of that dosage he had prescribed. This constitutes evidence that the standard of care was exceeded. Evidence does exist that her injuries were proximately caused by the negligence of Dr. Nelson.

We now turn to whether the summary judgment can be upheld because the suit is barred by the two year statute of limitations. Any negligence in administering the x-ray treatments occurred in November and December of 1967. Suit was filed December 7, 1979, and the defense of the two year statute of limitations was pled. Faye Wynn pled that the appellees, with knowledge that her problems were caused by the radiation treatment she had received, withheld this information from her and that only shortly before suit was filed did she discover the cause of her injuries. The evidence supports her plea.

Whether suit is barred by limitation depends on an application of the discovery rule pronounced by the Supreme Court in *Gaddis v. Smith*, 417 S.W.2d 577 (Tex.1967). The rule in that case is that a cause of action for negligent failure to remove a sponge from a patient's body during an operation, accrues when the patient learns of, or in the exercise of reasonable care and diligence, should have learned of the presence of the sponge in the body. In addition to foreign object cases, numerous instances have applied the discovery rule where misrepresentations of fact are made to a plaintiff by a defendant doctor. *Newberry v. Tarvin*, 594 S.W.2d 204 (Tex.Civ.App.–Corpus Christi 1980, no writ); *Conerly v. Morris*, 575 S.W.2d 633 (Tex.Civ.App.–Houston [1st Dist.] 1978, writ ref'd n.r.e.); *Fitzpatrick v. Marlowe*, 553 S.W.2d 190 (Tex.Civ. App.–Tyler 1977, writ ref'd n.r.e.). The basis of these decisions is that courts deem it contrary to the limitation statute's purpose to allow a defendant to invoke limitations where he has misrepresented the true facts, thus preventing a plaintiff from discovering them in time to institute suit.

This is not a foreign object case and is not strictly an affirmative misrepresentation case. Rather, it is a withholding of information from the patient as to the cause of her grave condition. The policy of the discovery rule is applicable and we see no reason not to apply it. Indeed, the case of *Grady v. Faykus*, 530 S.W.2d 151 (Tex. Civ.App.–Corpus Christi 1975, writ ref'd n.r. e.), applies the discovery rule in a suit seeking recovery for excessive radiation just as in this case. The evidence amply demonstrates that a fact issue exists about when Faye Wynn discovered the true facts of her condition or when she, in the exercise of ordinary care, should have discovered its cause. Because of that fact issue, and of the other evidence raising issues of negligence and causation, the trial court erred in withdrawing this case from the jury and instructing a verdict in favor of the appellees.

Faye Wynn also contends that the court erred in excluding from evidence testimony from Jack Morgan to show the width or thickness of her shoulder area. She testified that she was physically the same size on the date of trial that she was in November and December of 1967. Mr. Morgan, an expert witness, testified that he routinely measured medical patients, that he could tell the jury the exact measurement of Mrs. Wynn's shoulder area, and that this information is used to calculate the dosage of radiation given. At trial the appellees objected to the result of Mr. Morgan's measurement being admitted into evidence because Dr. Nelson testified that he performed the measurements in a different fashion. The evidence sought to be admitted was within the realm of Jack Morgan's expertise and upon a trial of this cause that evidence ought to be admitted if properly proved.

We reverse the judgment and remand the case to the trial court for trial.

ON MOTION FOR REHEARING

In their trial pleadings, brief on appeal, and oral argument, appellees contended that Faye Wynn's cause is barred by the general two-year statute of limitations, Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon 1958), covering actions for injury to other persons. In their motion for rehearing, the appellees now contend that we did not apply the proper limitations statute. They say that Article 5.82, § 4 of the Tex.Ins. Code Ann., repealed and replaced with Tex. Rev.Civ.Stat.Ann. art. 4590i, § 10.01 (Vernon Supp. 1982), effective August 29, 1977, applies and bars her claim because June 28, 1977, was the last date Dr. Stewart saw Faye Wynn for radiation therapy injuries.[1] This argument overlooks the point that the date of Dr. Stewart's last treatment, if relied on to establish a limitations defense, is an issue the jury was not allowed to resolve. Evidence supports May, 1979, as the last date of his treatment. They also now urge that our decision is contrary to *Lamar v. Graham,* 25 Tex. S.Ct. J. 51 (November 12, 1981). We disagree.

Concerning the limitations defense we hold that the evidence raises fact issues of 1) when Faye Wynn discovered the true facts of her condition or when she, in the exercise of ordinary care, should have discovered its cause; and 2) when she last received medical care treatment for the radiation injuries which are the subject of her claim. Under the evidence, whether the suit is barred by limitations remains a fact issue no matter which limitation statute appellees assert bars Faye Wynn's claim.

The motion for rehearing is overruled.

---

1. Tex.Ins.Code Ann. art. 5.82, § 4, repealed August 29, 1977, provides in pertinent part as follows:

"Notwithstanding any other law, no claim against a person ... covered by a policy of professional liability insurance covering a person licensed to practice medicine ... in this State, ... whether for breach of express or implied contract or tort, for compensation for a medical treatment ... may be commenced unless the action is filed within two years of the breach or the tort complained of or from the date the medical treatment that is the subject of the claim ... is completed, ..."

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01 (Vernon Supp.1982), provides:

"Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from ... the date the medical or health care treatment that is the subject of the claim ... is completed, ...".