Vannie E. COOK, Jr., d/b/a/ Engleman Farms and El Ramon Development Co., Inc., Appellants,

v.

RIO GRANDE VALLEY SUGAR GROWERS, INC., Appellee.

No. 1976.

Court of Appeals of Texas, Corpus Christi.

Aug. 26, 1982.

Rehearing Denied Sept. 23, 1982.

Charles C. Murray, Atlas & Hall, McAllen, for appellants.

Neil Norquest, Ewers & Toothaker, McAllen, for appellee.

Before NYE, C.J., and BISSETT and YOUNG, JJ.

## OPINION

BISSETT, Justice.

This is an appeal from a summary judgment in favor of the appellee, defendant in the trial court. Vannie E. Cook, Jr., doing business as Engleman Farms, and El Ramon Development Co., the appellants, filed this action against Rio Grande Valley Sugar Growers, Inc., the appellee, to recover sums of money allegedly wrongfully withheld from them by the appellee.

The appellee is a non-profit stock cooperative marketing association formed in 1971 for the purpose of establishing a sugar cane industry in the Rio Grande Valley. To ensure a source of revenue, the appellee required its members to execute ten-year marketing agreements. These agreements required the members to grow and deliver to the appellee a specified tonnage of sugar cane each year or pay damages if the specified tonnage was not delivered. The appellee in turn agreed to harvest, transport and sell the specified tonnage for the member's account.

In 1971, Engleman Farms entered into a marketing agreement with the appellee. Engleman agreed to grow and deliver to the appellee 42,000 tons of sugar cane on 1,000 acres for ten years beginning October, 1973. Thereafter, El Ramon, upon the recommendation of Engleman, entered into a marketing agreement in which it also agreed to grow and deliver 42,000 tons of sugar cane on another 1,000 acres. Engleman operated El Ramon's 1,000 acre allotment; thus, Engleman controlled a 2,000 acre allotment and was obligated to grow and deliver to the appellee 84,000 tons of sugar cane.

The marketing agreements executed by the appellants contained the following liquidated damages clause:

"15. (a) Inasmuch as the remedy at law would be inadequate and inasmuch as it is now and ever will be impractical and extremely difficult to determine the actual damage resulting to Association should Grower fail to deliver any sugar cane as herein provided, Grower hereby agrees to pay Association for all such sugar cane delivered, sold, consigned, withheld or marketed by or for him, or which he refuses to grow, other than in accordance with the terms hereof, the sum of FIVE DOLLARS ($5.00) per ton as liquidated damages for the breach of this contract. Grower hereby agrees to pay Association ONE DOLLAR ($1.00) per ton as liquidated damages for any shortfall in any year Grower fails to deliver to the mill 33,600 tons of sugar cane [80% of 2(a)]. If in the exclusive opinion of the Association, such shortfall is due to any act of God or any act beyond the control of

Grower, Association may waive all or some part of such damages."

At the time of the execution of the marketing agreements, the appellants had no experience with sugar cane farming. They were therefore dependent upon the appellee for advice and information concerning the growing of sugar cane. The appellants were told by representatives of the appellee that to have sufficient seed cane to plant their 2,000 acre allotment, they needed to plant at least 200 acres of seed. Once the seed matured and stalks were grown, portions of the stalks would then be cut off and used to plant the 2,000 acre crop.

The first season in which the appellants were required to deliver 84,000 tons of sugar cane was the 1973–74 grinding season. In late 1971 and early 1972, the appellants planted a total of 236.73 acres of seed. The appellants expected this seed bed to yield sufficient seed cane to plant their entire 2,000 acre allotment. In the fall of 1972, however, as the planting of the crop progressed, it became apparent to the appellants that their seed bed contained insufficient seed cane at that time to plant their full 2,000 acre allotment. The appellants were only able to plant approximately 1,340 acres.

At the time the appellants realized that their seed bed produced an insufficient amount of seed cane to plant the entire 2,000 acres, seed cane was scarce in the Rio Grande Valley and was virtually impossible to obtain from other sources. The appellee, fearful of disease, would not permit the appellants to use of seed cane produced from areas outside the Rio Grande Valley. Unable to obtain more seed cane, the appellants decided to complete their planting in March of 1973, at which time they expected their original seed bed to yield enough second-growth seed cane to plant the remaining 660 acres. In January of 1973, however, an unusually harsh freeze damaged the second-growth stalks in the appellants' seed bed. The stumps from which the stalks grew were not damaged.

Following the freeze, the appellants did not have any seed cane with which to plant their remaining 660 acres. Other farmers in the area used the stumps from their seed bed to plant their crops. The appellants elected not to plant their stumps because of the expense and uncertainty involved.

When the 1973–74 grinding season began, the appellants were unable to deliver the entire 84,000 tons of sugar cane required by their marketing agreements. There is a conflict in the appellee's summary judgment evidence as to the exact amount of tonnage actually delivered by the appellants. Willard Sauerbret, the Comptroller for the appellee, in his affidavit, said that the appellants "delivered only 58,666 of the 84,000 tons of sugar cane which they had contracted to deliver for the grinding season of October 1973 to April, 1974." Jack Nelson, the General Manager for the appellee, in his affidavit, said that the appellants "delivered only 48,502.4 tons of sugar cane to the Co-op for the grinding season, October, 1973 to April, 1974." Regardless of the conflict, it is undisputed that the market value of the sugar cane actually delivered by the appellants to the appellee was $336,208.28, and that the appellee paid the appellants $209,542.58. It is further undisputed that the deduction of $126,665.70 made by the appellee was made pursuant to the "FIVE DOLLARS per ton as liquidated damages for the breach of this contract" provision of the contract. The amount of the deduction was computed at $5.00 × 25,332.14 tons which Sauerbret, in his affidavit, said that the appellants should have produced, "but did not." The record reflects, however, that even if the appellants had planted their entire allotments, the appellee would not have been able to harvest all of the sugar cane grown. In fact, the appellee was unable to harvest all of the sugar cane actually grown by the appellants.

■ The true purpose of summary judgments is to eliminate patently unmeritorious claims or untenable defenses. *Swilley v. Hughes,* 488 S.W.2d 64, 68 (Tex.1972); *Newberry v. Tarvin,* 594 S.W.2d 204, 206 (Tex.Civ.App.—Corpus Christi 1980, no writ).

A summary judgment granted in favor of a defendant, as in this case, may be affirmed *only if* the summary judgment evidence in the record shows that there is no genuine issue as to any material fact as to at least one essential element of plaintiff's cause of action, and the movant is entitled to judgment as a matter of law. *Farley v. Prudential Insurance Company,* 480 S.W.2d 176, 178 (Tex.1972); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); *Billstrom v. Memorial Medical Center,* 598 S.W.2d 642, 645 (Tex.Civ.App.— Corpus Christi 1980, no writ).

The party seeking the summary judgment has the burden of proof, and all doubts as to the existence of a genuine issue of fact are to be resolved against him. *Parrott v. Garcia,* 436 S.W.2d 897, 899 (Tex. 1969); *Byke v. City of Corpus Christi,* 541 S.W.2d 661, 664 (Tex.Civ.App.—Corpus Christi 1956, no writ). Summary judgments are not to be granted on default of the opponent, but only on the merit of the summary judgment evidence. *Swilley v. Hughes,* supra, at page 68.

The appellants, in their written opposition to appellee's motion for summary judgment, noted that there is a factual inconsistency in the appellee's summary judgment proof in that in one affidavit it is stated that appellants delivered to appellee 58,666 tons of sugar cane, but in another affidavit it is stated that they delivered only 48,502.04 tons. The appellants further said:

> "Because the tonnage that Plaintiffs were short under their contract was 'shortfall' as that term is used in the contracts and that Defendant is thus entitled to no recovery because said shortfall resulted from an act of God or an act beyond the control of Plaintiffs, or alternatively, that Defendant is entitled to recovery of only $1.00 per ton, that being the stipulated amount of shortfall..."

Thus, the appellants, in their opposition to the appellee's motion for summary judgment, contended that a genuine issue of fact existed as to whether their failure to deliver the tonnage required by their contracts was a "shortfall" within the meaning of the above-quoted liquidated damages clause. The same contention is made in their fifth point of error, which reads, as follows:

> "The trial court erred in granting Defendant Rio Grande Valley Sugar Growers, Inc. a summary judgment because the summary judgment evidence conclusively showed that, or at least raised a fact question whether, Plaintiffs' inability to produce the tonange called for by their contracts was 'shortfall' as that term is used in the contracts, thus limiting Defendant to the use of a penalty that should have been waived, or that, alternatively, was limited to $1.00 per ton rather than $5.00 per ton."

As already stated, the appellee withheld from the sums due the appellants, five dollars ($5.00) for each ton of sugar cane they failed to deliver. If, however, the appellants' failure to deliver the specified tonnage was a "shortfall," the appellee would have been entitled to withhold only one dollar ($1.00) per ton. Thus, whether the appellants' failure to deliver was a "shortfall" is a *material* issue of fact.

The term "shortfall" is not defined in the marketing agreement. Further, the appellee did not conclusively establish the number of tons of sugar cane actually delivered to it by the appellants. An issue of fact as to whether there was a "shortfall" remains unresolved. Accordingly, we hold that the trial court erred in granting the appellee's motion for summary judgment.

We need not reach the appellants' remaining points of error. The judgment of the trial court is reversed and the cause is remanded to that court for trial.

REVERSED AND REMANDED.