STEINMETZ & ASSOCIATES, INC., et al., Appellants,

v.

**Larry C. CROW, Appellee.**

**No. 04–84–00147–CV.**

Court of Appeals of Texas, San Antonio.

Oct. 30, 1985.

Rehearing Denied Dec. 5, 1985.

Ronald B. King, Michael B. Hunter, San Antonio, for appellants.

Jack Pasqual, Dan Pozza, Pasqual & Pozza, San Antonio, for appellee.

---

* Assigned to this case by the Chief Justice of the Supreme Court of Texas as authorized pursuant to Paragraph (d) of Article 1812, Texas Revised Civil Statutes as amended by H.B. 2244 (Acts 1983, 68th Leg., p. 1912, Ch. 354, Sec. 1, eff. June 16, 1983).

1. Another element of tortious interference with a contract is the requirement of a *valid* contract.

## OPINION

Sitting: BUTTS and TIJERINA, JJ., and (Dissents Without Opinion) T.C. CHADICK, Assigned Justice.

### T.C. CHADICK, Assigned Justice *

This is a suit brought by Larry C. Crow, as trustee, alleging actions in trespass to try title, for tortious interference and tortious conspiracy, for specific performance, and for declaratory judgment. Defendant, Airport Office Park, Ltd., filed a general denial and counterclaim for a declaratory judgment and damages. The other defendants entered general denials. The cause was tried to a jury and based upon its findings, judgment was entered awarding Larry C. Crow a $200,000.00 recovery ($125,000.00 actual damages and $75,000.00 exemplary damages) from Steinmetz and Associates, Inc., Austin-Fagan-DuBois, Inc. and James O. Matthews, jointly and severally, otherwise, all relief not granted was denied.

### THE STEINMETZ APPEAL

The trial court's charge submitted twenty-eight special issues together with instructions. The first nineteen presented for jury determination issues of fact relevant to Crow's tortious interference and tortious conspiracy theories of recovery and related actual and exemplary damage issues. The jury's answers to twelve of the nineteen issues are the basis of the judgment entered against Steinmetz Associates, Inc.

 One element[1] of a cause of action for interference with contract or business relation is that the interferer had actual knowledge of the contract or business relation in question, or knowledge of facts and circumstances that would lead a reasonable

---

It has been held that if the contract breached be one which the party may or may not perform at his option, the rule of recovery does not apply. *Richardson v. Terry,* 212 S.W. 523, 525 (Tex.Civ. App.—El Paso 1919, writ dism'd). The same is not true of an unenforceable contract. *Clements v. Withers,* 437 S.W.2d 818 (Tex.1969).

person to believe in the existence of the contract or business relationship. *Armendariz v. Mora,* 553 S.W.2d 400, 405 (Tex. Civ.App.—El Paso 1977, writ ref'd n.r.e.); *Frost National Bank v. Alamo National Bank,* 421 S.W.2d 153, 156 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.); *Kelly v. Rozelle,* 294 S.W. 699, 701 (Tex.Civ.App.—Austin 1927, writ dism'd).

In answer to special issue number three, the jury found that Steinmetz Associates, Inc. knew or in the exercise of ordinary care should have known of the existence of a contract for the sale of Lot 15 between Larry Crow and Juanita Ramos and her children, the sellers. Steinmetz Associates, Inc. by appropriate points of error challenge the legal and factual sufficiency of the evidence to support the finding and the judgment based on it.

In determining a no evidence point, appellate courts consider only the evidence supporting the jury's finding in its most favorable aspect and give effect to all reasonable inferences which may be properly drawn therefrom. In determining factually insufficient evidence points such courts consider the evidence supporting the jury finding and determine whether its probative effect is of sufficient strength to support the finding. And further, in determining factual insufficiency all evidence will be considered by courts of appeals to determine whether the jury's finding is so contrary to the great weight and preponderance of the evidence as to be unjust. *Dolenz v. Continental National Bank of Fort Worth,* 620 S.W.2d 572, 576 (Tex. 1981); *Elliott v. Great National Life Insurance Co.,* 611 S.W.2d 620, 621 (Tex. 1981); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX.L.REV. 361 (1960).

Juanita Ramos and her children, Santiago Ramos, John Ramos, Raul Ramos, and Zeferana Ramos Cuellar owned Lot 15 at 610 E. Ramsey Road in San Antonio, Bexar County, Texas, at times pertinent to this action. Larry C. Crow is a real estate broker, developer, appraiser and owner of property in the area of Lot 15 that he developed for commercial purposes. Steinmetz and Associates, Inc. is a Texas corporation engaged in the real estate business in San Antonio both as broker and developer. Charles P. Steinmetz is president and one of the shareholders in the corporation. James O. Matthews is a self-employed real estate broker. Austin-Fagan-DuBois, Inc. is a corporation engaged in the real estate brokerage business owned by James O. Matthews. Airport Office Park, Ltd. is a limited partnership that developed commercial property on Ramsey Road in the vicinity of Lot 15. And, Edwin M. Jones Oil Company is a local San Antonio business that owns real estate in the Ramsey Road area and is the entity for whom Larry C. Crow was acting as trustee.

Deanie Owens Company is a real estate business and part owner of Deanie Owens Airport Office, a real estate brokerage firm. Miss Dorothy Tell, called Dottie, who after marriage became Mrs. Dottie Goerner, is a real estate broker who worked as a salesperson in association with Deanie Owens Airport Office. Richard Austin is a real estate broker, salesman and part owner of the Deanie Owens Airport Office brokerage firm.

The contract in question is the written agreement by Larry C. Crow, trustee, to purchase Lot 15 from Juanita Ramos and her children and their agreement to sell it under the terms set out. The parties refer to the written agreement as an earnest money contract. The business relationship in question is the relationship that developed in the course of Crow's efforts to purchase Lot 15 from them. Lot 15 is a tract of land, pled by its legal description, and usually referred to in the record by its number.

Mrs. Ramos, acting on behalf of herself and her children agreed to sell Lot 15 to Crow on February 5, 1981, for $65,000.00. Crow tendered $1,000.00 earnest money at the time. The written contract was executed by the several Ramos children at a later date.

In determining the no evidence point the evidence recounted will be stated in its most favorable aspect in support of the jury finding on special issue three. To show that Steinmetz Associates, Inc. knew or should have known on February 12, 1981, that Crow and some of the Ramos owners had entered into a contract on February 5, 1981, Crow's brief points to and relies upon evidence that Matthews arranged with the Deanie Owens Airport Office to participate in his efforts to buy Lot 15 and other real property in its vicinity and in this way enlisted the aid of Dottie Tell to negotiate with the Ramos family for the purchase of Lot 15, together with other evidence hereafter noticed. In October, 1980, Matthews prepared for Dottie Tell's use, an earnest money contract obligating the Ramos family to sell Lot 15 to Austin-Fagan-DuBois, Inc. for $55,000.00 and furnished it to Dottie Tell. On or about January 10, 1981, she returned to Matthews the contract instrument signed by all the owner members of the Ramos family, but with the purchase price changed from $55,000.00 to $65,000.00.

Matthews apparently rejected the returned agreement as a counter offer, vented his displeasure with Tell's performance, and accused her of unethical practices [i.e. informing others of the "master plan" to acquire certain properties] but kept the signed instrument and submitted it to Steinmetz Associates, Inc. on February 10, 1981. The firm accepted assignment of the contract on February 12, 1981, and arranged for a closing on it which was accomplished March 11, 1981. It was established that the Ramos family requested the early closing. Matthews requested from the Ramos' attorney a thirty day extension of the February 12, 1981 contract; an extension was agreeable and a new contract was circulated but closing was effected within the next to last day of the thirty day period required by the original agreement.

Previously, or at the time Matthews submitted the Ramos earnest money contract to Steinmetz Associates, Inc. and its acceptance, he related to Steinmetz his experience with and his views of Dottie Tell and information about her conversation with Crow that he had received from Richard Austin. Excerpts from the statement of facts that follow show specifically the information Matthews received and passed on to Steinmetz Associates, Inc.

Austin's testimony:

Q: Okay. Did you ever overhear any conversations between Mr. Crow and Dottie Tell concerning property on Ramsey?

A: I heard pieces of conversation.

Q: Okay. Could you relay to me those?

A: No, sir, except that I went to the owner-broker sometime in January, and indicated that I wasn't sure, but that—and, I do not recall the pieces due to some—and, the door was not closed to the office, when I heard those pieces—that I had a feeling that Dorothy might be discussing Mr. Matthews' plans in the Ramsey Road area with Mr. Larry Crow, and I wasn't positive, but if so, I could see it as being potentially very bad.

Q: How could it be potentially very bad?

A: Well, Mr. Matthews had outlined to us all the properties that his client, they were trying to obtain, in his master plan.

Matthews as a witness:

Q: ... 'Did you ever convey the substance of that, what we referred to as the betrayal,' you know, from Dottie Tell and this other target you mentioned, and what Mr. Austin had informed you. 'Did you every convey the substance of that to Mr. Steinmetz and inform him what was going on with the property?' ...

A: Yes, sir.

The evidence quoted, together with other, establishes at best that at the time of Matthews' assignment to Steinmetz Associates, Inc. the Steinmetz organization knew that prior thereto Tell and Crow had discussed property on Ramsey Road, that Tell had knowledge of the focus of Matthews' buy-

ing plans, which included Lot 15, that Crow was a real estate broker/appraiser/developer owning property in the area discussed, and that Steinmetz Associates, Inc. closed the deal with the Ramoses on the next to last day before expiration of the initial Ramos to Austin-Fagan-DuBois, Inc. earnest money contract, even though Steinmetz Associates, Inc. then had an oral agreement from the Ramoses' attorney for a thirty-day extension.

For concise guidance, we will employ textual treatment and summarization of decided cases respecting the extent of duty to inquire, nature of facts exciting inquiry, and the facts and circumstances from which knowledge or notice is derived, as a standard by which to determine such issues here. 45 AM.JUR.2d *Interference* § 11 (1969), states in part:

> Knowledge of the existence of a contract or business relationship is a condition of liability for interference with it.... But it is not necessary to prove actual knowledge; it is enough to show that defendant had knowledge of facts which, if followed by reasonable inquiry, would have led to complete disclosure of the contractual relationship and rights of the parties.

41 TEX.JUR.2d *Notice* § 5 (1963) states:

> Although actual notice includes the knowledge of all those facts that a reasonable inquiry would have disclosed, the duty of inquiry extends only to those matters that are fairly suggested by the facts really known, circumstances that may merely arouse suspicion in the mind of a reasonably prudent person are generally regarded as insufficient to charge notice.

And continues in section 9 where it is stated in part:

> ... There must also appear in the nature of the case such a connection between the known facts and the further facts to be discovered that the former may be said to furnish a reasonable and natural clue to the latter. And where the circumstances claimed to be sufficient to charge a person with notice may be

equally well referred to some matter other than that with notice of which he is sought to be charged, they will not be deemed sufficient.

*See also Flack v. First National Bank of Dalhart,* 148 Tex. 495, 226 S.W.2d 628 (1950); *University State Bank v. Gifford-Hill Concrete Corp.,* 431 S.W.2d 561 (Tex. Civ.App.—Fort Worth 1968, writ ref'd n.r. e.); *Houston Oil Co. of Texas v. Griggs,* 181 S.W. 833 (Tex.Civ.App.—Beaumont 1915), *aff'd,* 213 S.W. 261 (Tex.Comm'n App.1919, opinion adopted).

■ The conclusion is here reached that it would be extending the doctrine of implied knowledge or notice well beyond its limit to hold the facts, in their most favorable aspect, are sufficient to satisfy the test in the paragraph next above and hold that Steinmetz and Associates, Inc. knew, on or before February 12, 1981, that Crow contracted for the purchase of Lot 15 with some Ramos owners. There is a difference between suspicion and knowledge. Suspicion is doubt, an absence of trust. Knowledge is a clear perception of fact, an awareness of truth. The evidence considered in its most favorable aspect amounts to no more than suspicion. At most it reveals that only Crow, Tell, and Mrs. Ramos (deposition testimony) knew about the Crow contract. Even the Ramos attorney did not know. It reveals no fact or truth about knowledge of the Ramos-to-Crow contract. Suspicion and conjecture or surmise based upon it is not knowledge or means of knowledge. The realm of suspicion, and conjecture or surmise based upon it is outside the bounds of the doctrine of implied notice.

Judgment was also entered on special issues grounded on tortious interference with the business relationship between Crow and the Ramos family as alleged in Crow's action. The legal and factual sufficiency of the jury findings supporting the judgment thereon are challenged by Steinmetz and Associates, Inc. A lengthy discussion is not required. *See Morris v. Jordan Financial Corp.,* 564 S.W.2d 180, 184 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.

e.), as to interference with a business relationship. The evidence shows that it was after the real estate closing that the defendants learned of the Crow/Ramos contract.

There is no evidence supporting an action against Steinmetz on interference with business relationship grounds.

## AUSTIN–FAGAN–DUBOIS, INC. AND JAMES O. MATTHEWS APPEAL

Matthews is sole owner of the corporation; discussion will disregard the corporate fiction. Matthews' position is not identical with that of Steinmetz and Associates, Inc. with respect to knowledge of the Crow/Ramos contract of February 5, 1981. But for the reasons discussed in disposing of the knowledge issue in the Steinmetz and Associates, Inc. appeal, a similar disposition must be made of the issue as it affects Matthews. The evidence pertaining to Matthews, on final analysis, is legally and factually insufficient to support the jury finding that Matthews knew or should have known of the Crow/Ramos contract at the time he assigned the Austin-Fagan-DuBois, Inc./Ramos contract to Steinmetz and Associates, Inc. Also the tortious interference with a business relationship will be disposed of in the same manner and for the reason discussed in the Steinmetz and Associates, Inc. appeal.

■ We further find that even if a cause of action for tortious interference with a contract had been proved, no showing of malice was made. This would be necessary for a recovery of punitive damages. *See e.g., Bellefonte Underwriters Insurance Co. v. Brown,* 663 S.W.2d 562, 573 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Morris v. Jordan Financial Corp., supra,* at 184.

## CONSPIRACY

■ To be actionable, a civil conspiracy must be unlawful in itself or accomplished by unlawful means. Such conspiracy consists of acts which are actionable against conspirators individually. *International*

*Bankers Life Insurance Co. v. Holloway,* 368 S.W.2d 567, 581 (Tex.1963); 16 AM. JUR.2d *Conspiracy* §§ 49, 51, 53 (1979).

If the conclusions respecting the failure of proof in the Steinmetz and Associates, Inc., Austin-Fagan-DeBois, Inc., and Matthews appeals are correct and evidence does not support the jury finding and judgment, necessarily, the evidence is likewise legally and factually insufficient to support the conspiracy finding and judgment.

## RECAPITULATION

In view of the conclusions announced, and because our determination of no evidence includes a determination of insufficient factual evidence, the Steinmetz and Associates, Inc. points of error three, four, nine, ten, eleven, twenty-three and twenty-four are sustained. Likewise, points of error three, four, eleven, twelve, twenty-three, twenty-four, twenty-nine, thirty and thirty-seven briefed by Austin-Fagan-DuBois, Inc. and Matthews are sustained. Failure of proof of an indispensable element of the actions pled requires reversal. Therefore, the judgment of the trial court is reversed and judgment rendered that Crow take nothing by his suit.