James Lee **BAIN**, et al, Appellants,

v.

**JAMES CAIN COMPANY, Appellee.**

**No. 9278.**

Court of Appeals of Texas,
Texarkana.

Aug. 5, 1986.

**422**

Gordon Holloway, Sewell & Riggs, Houston, for appellants.

John A. Cavin, Ross, Banks, May, Cron & Cavin, Houston, for appellee.

Before Cornelius, C.J., and Bleil and Chadick, JJ.*

CHADICK, Justice (Retired).

Counsel for appellants filed an agreed motion, signed by attorneys for all parties, to dismiss this appeal pursuant to Tex.R. Civ.P. 387a. The motion recites that the parties have settled all causes of action and claims incident to the appeal and prays the appeal be dismissed "with all costs to be borne by the party incurring same." Tex. R.Civ.P. 387a(d) provides that if dismissal occurs after submission, such action shall not prevent issuance of an opinion by the Court on the points presented if the Court deems such an opinion appropriate.

Previous appellate consideration of this case may be found in the opinion of the Supreme Court in *Cain v. Bain,* 709 S.W.2d 175 (Tex.1986), and in the original opinion of this Court, which was not published but is now annexed as an exhibit and made a part hereof. Repetition will be avoided so far as practical.

The Bains' original appeal brief contained three points of error. The first related to an instructed verdict in favor of James Cain. The second raised the issue of insufficient evidence to support the jury answer to Special Issue No. 7. And the third challenged the jury's answer to Special Issue No. 7 as being contrary to the great weight and preponderance of the evidence. This Court originally sustained the first and second points of error and did not reach or decide the third. The Supreme Court remanded the appeal saying, "There is some evidence to support the jury verdict," and instructing this Court to "consider the insufficiency points of error...."

This Court's original opinion recognized and stated the insufficient evidence and great weight and preponderance of the evidence question should be decided in harmony with the standards set by *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951), and interpretive writings consistent therewith. An effort was made to briefly and concisely draw attention to the character of the principal evidence and comment on the several aspects of its nature, quality, quantity, weight and preponderance.[1] This Court mistakenly relied upon its comment to make the correct disposition of the insufficient evidence issue so obvious that it would be superfluous to write in specific detail.[2] The Supreme Court opinion singularly misunderstood the purpose of this comment on the evidence and construed it as the application or enunciation of a standard of review in conflict with the standard established by *In re King's Estate,* supra. The comment that the facts in evidence did not point "unerringly to a foundation defect" explicitly called attention to the circumstance that inferences therefrom were ambiguous in nature. In context with the next sentence such meaning cannot easily be mistaken.

The Supreme Court's opinion sums up the evidentiary record in this manner:

> The evidence revealed that when the Bains moved into the house they noticed a bulge under one window, a crack in the kitchen wall, and a sticking door. Within

* Honorable T.C. Chadick, Justice, Supreme Court of Texas, Retired, sitting by assignment.

1. As earlier noted, no evidence was not an issue, the Bains urged a factual insufficiency point of error separately from their great weight and preponderance point. Only factual insufficien-

cy was addressed in this Court's original opinion.

2. The original was written as a per curiam, not to be published opinion involving clearly settled issues. The factual record was in the hands of the parties and before the courts.

six or seven months after occupying the house, they noticed a foundation crack near the patio. Karen Bain testified that during the spring or summer of 1977 she was told there might be a slab problem with the house.

The Bains presented some evidence to the contrary. They consulted with a foundation expert in April, 1978, who informed them that there was not a substantial foundation defect. Also, they argue the flaws in the house could have been indicative of problems other than a foundation defect, such as ordinary subsidence problems common to the Houston area, or the effects of age, dampness and weathering on a 20-year-old house.

This analysis of the evidence recognizes that from the same evidence by which the jury might infer a foundation defect as a fact, it might equally well infer as a fact the nonexistence of a foundation defect. In *Litton Industrial Products v. Gammage*, 668 S.W.2d 319 (Tex.1984), it is said when inferences are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred. In *Houston Oil Co. of Texas v. Griggs*, 181 S.W. 833 (Tex.Civ. App.—Beaumont 1915), *aff'd*, 213 S.W. 261 (Tex.Comm'n App.1919, opinion adopted), it is said:

> [W]here the circumstances relied upon as sufficient to charge a party with notice may equally as well be referred to some other matter as the one with notice of which he is sought to be charged, they will not be deemed to be sufficient.

*See Texas Sling Company v. Emanuel*, 431 S.W.2d 538 (Tex.1968); *Steinmetz & Associates, Inc. v. Crow*, 700 S.W.2d 276 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.), 41 Tex.Jur.2d *Notice* § 9 (1963). Moreover, if the evidence be fairly susceptible of two constructions, the Court of Appeals' construction and findings are binding upon the Supreme Court. *Schwingle v. Keifer*, 105 Tex. 609, 153 S.W. 1132 (1913).

The jury was asked to find from the preponderance of the evidence whether or not on or before October 13, 1977, the Bains either had knowledge of "such substantial foundation structural defect, or were on notice of such facts as would cause a reasonable, prudent person to make inquiry which would lead to the discovery of such defect by the exercise of reasonable diligence." Knowledge is said to be a clear perception of fact, an awareness of truth. *Steinmetz & Associates v. Crow*, supra. There is no direct evidence that the Bains had knowledge of a foundation defect, but they were aware of the facts noted in the Supreme Court's analysis.

For practical purposes, the record is that the jury had for consideration positive evidence that a residential foundation expert was of the opinion in April, 1978, that the property did not have a substantial foundation defect and so advised the Bains. On the other hand, from the sticking door and other facts known to the Bains on or prior to October 13, 1977, the equivocal and inconsistent inferences arise that are the sole support of the jury's verdict on the issue. These inferences tended to prove either that the property had or did not have a substantial foundation defect and their potency as probative evidence of the fact found is compromised by ambiguity.

The positive nature of the expert's testimony so far outweighs and preponderates over the equivocal inferences that the conclusion is, as in this Court's original opinion, that the probative value of the evidence tending to support the jury's answer is insufficient to do so. Further, a finding based upon such inferences that the Bains had notice that the foundation was defective on or prior to October 13, 1977, is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust. More elaborate discussion will be omitted in view of the judgment to be entered.

Disposition of the appeal by an opinion is deemed appropriate as contextual background to the Supreme Court's opinion and order. The motion to dismiss mentioned in the initial paragraph is granted, and the appeal is dismissed and costs adjudged as prayed.

EXHIBIT

Aug. 13, 1985

PER CURIAM.

This is an appeal in a suit for damages grounded on the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.41, et seq. (Vernon Supp.1985). A take nothing judgment was entered in the trial court.

In June of 1976, James and Karen Bain executed a contract for the purchase of residential real estate in Houston. The sellers were George and Carroll Banks. Jan Keener, a licensed real estate saleswoman, brokered the transaction in collaboration with James Cain, a licensed real estate broker. The relationship of James Cain and Jan Keener with James Cain Company, a corporation and not a party to this suit, and James Cain Company, a proprietorship and a party to the suit will be the focus of later discussion. The Bains and Banks closed the sale in November of 1976, and the Bains immediately occupied the property. In 1978, the Bains attempted to sell the property but failed because of a defect in the house foundation. Although the plaintiffs alleged fraud and other grounds for recovery, in the course of the trial they waived all causes of action except those grounded in the Deceptive Trade Practices Act.

The plaintiffs' trial petition named as defendants James Cain Company, George Banks, and Carroll V. Banks and in Paragraph VII alleged that James Cain was proprietor of the James Cain Company. The trial petition pled and by a statement of plaintiffs' counsel in open court acknowledged that the plaintiffs confined their cause of action against the James Cain Company to the misconduct of James Cain Company, of which James Cain was proprietor.

James Cain filed a verified answer reciting that he, James Cain, was a defendant in

the action [1] and among other defensive allegations pled that he was not doing business under the trade name James Cain Company and that he was not liable in the capacity in which he was sued.[2] He also alleged that since April 22, 1969, some eight years before the Bains/Banks deal, the James Cain Company, a proprietorship, had been converted into a corporation chartered under the laws of the State of Texas. A separate answer was filed by defendants George Banks and Carroll V. Banks. The record contains no answer filed by or on behalf of James Cain Company, a proprietorship.

The only basis for James Cain answering as James Cain, insofar as the record shows, was his construction of plaintiffs' pleadings that the James Cain Company, a proprietorship, was in fact James Cain, an individual doing business as James Cain Company. The trial court and all parties proceeded to trial upon this apparent construction of the pleadings. There is no basis for this Court's indulging in a different construction.

James Cain's posture in the case as set out in his pleadings and developed by the evidence he tendered, was that his acts and conduct and the acts and conduct of Jan Keener in the Bains/Banks transaction were as employee and independent contractor saleswoman of the James Cain Company, a corporation, specifically that they acted for the corporation and not for James Cain Company, a proprietorship.

James Cain testified that his participation in the sales transaction was as president of James Cain Company, a corporation. The corporation was the broker for the transaction. Likewise, he said Jan Keener, the licensed saleswoman, was a Real Estate Salesman [3] engaged as an independent contractor by the corporation and her participation was in behalf of the corporation as the broker. The commission earned from this transaction was paid to

1. In verifying the pleading James Cain swore he was a defendant in the case.

2. The plea of nonliability in the capacity in which sued properly pled is a plea in abatement.

Treated as such, the record does not show it was presented to the trial judge or ruled upon.

3. As defined by Tex.Rev.Civ.Stat.Ann. art. 6573a (Vernon 1969).

James Cain Company, a corporation. The corporation was not licensed by the state as a Real Estate Broker and was not qualified to become a Real Estate Salesman under Article 6573a as it then existed.

Neither Cain nor Keener could have lawfully been employed or engaged as licensed Real Estate Broker or Real Estate Salesman for the corporation as those terms are defined by the Texas Real Estate Brokers Act at the date of the transaction. Under the terms of Tex.Rev.Civ.Stat.Ann. art. 6573a, §§ 3, 26, 27 (Vernon 1969) (Amended by Act of 1979, 66th Leg., Ch. 585, 197 Tex.Gen.Laws 3730), it is a misdemeanor for an unlicensed corporation to engage in business as a Real Estate Broker, or for licensed salesmen and brokers to pay or share a commission with an unlicensed corporation acting as a broker. The fact that James Cain as president of the corporation was licensed as a broker was not substantial compliance with the provisions of the Act. *Coastal Plains Dev. Corp. v. Micrea, Inc.,* 572 S.W.2d 285 (Tex.1978).

The trial court granted a directed verdict for James Cain Company as a sole proprietorship, and entered a take nothing judgment in its favor. This action is the subject of appellant Bains' first point of error. A directed verdict can be upheld only if the record contains no evidence of probative force to raise material fact questions. In reviewing a directed verdict courts must consider all evidence in the light most favorable to the party against whom the verdict was directed, discarding all contrary evidence and inferences. And, if reasonable minds may differ on resolution of controlling facts, jury issues exist, and the directed verdict cannot stand. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292 (Tex. 1983); *Wynn v. Mid-Cities Clinic,* 628 S.W.2d 809 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.).

The misconduct alleged on which the plaintiffs ground their action against James Cain Company, a proprietorship, was shown by James Cain's testimony to be that of an employee or a sales representative of the James Cain Company, a corporation. This evidence is from an interested party. But there are facts and circumstances that tend to lend credibility to it. Cain pled as a defense that his participation was as president on behalf of the corporation. The defendants consequently had sufficient notice to marshal evidence to rebut the allegation. The corporation's charter was introduced in evidence and shows the organization to have been chartered in 1969, some seven years preceding the sales transaction in question. Also, the former James Cain Company had been merged into the corporation according to Cain. However, the test of the sufficiency of an interested witness' testimony to support an instructed verdict is that the testimony pertain to matters that are reasonably capable of exact statement, is clear, is direct and positive, is internally devoid of inconsistencies and contradictions, and is uncontradicted either by testimony of other witnesses or circumstances, and there is nothing to cause a reasonable suspicion as to its truth. *Collora v. Navarro,* 574 S.W.2d 65 (Tex. 1978); 3 R. McDonald, *Texas Civil Practice in District and County Courts* § 11.28.6 (1983).

The conclusion is compelled that James Cain's testimony does not satisfy the requirements that evidence be internally devoid of inconsistencies and contain nothing to cause a reasonable suspicion as to its truth. James Cain and Jan Keener were each licensed and could have, in lawful compliance with the Texas Real Estate Brokers Act, handled the deal in their licensed capacities and thereafter enforced in court, if necessary, payment of their fees and commissions. In contrast with a lawful procedure, Cain claimed in his testimony acts and conduct that would constitute a violation of criminal law and would have subjected Cain and Keener to prosecution, if detected, as well as have barred them from an action in court to collect fees and commissions. See *Henry S. Miller Co. v. Treo Enter.,* 585 S.W.2d 674 (Tex.1979).

The fact that it was to James Cain's advantage in the present case to say he and Keener violated the penal law rather than

to say they complied when to do so was lawful and to their advantage, standing unexplained is at odds with normal behavior and runs counter to the rebuttable presumption that persons act lawfully. The circumstances arouse a reasonable suspicion as to the veracity of Cain's testimony. Also, the circumstances in combination raise an issue of fact as to whom Cain and Keener represented in the sales transaction. Reasonable minds might differ. A fact question is presented for resolution.

The questions in the Bains' remaining points of error are whether, after considering all of the evidence, the jury's finding in Special Issue No. 7 is not supported by sufficient evidence, and is so against the great weight and preponderance of the evidence as to be manifestly unjust. These issues must be determined by the standards discussed in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Cornelius, *Appellate Review of Sufficiency of the Evidence Challenges In Civil and Criminal Cases*, 46 Tex.B.J. 439 (1983). By the special issue the jury found that the Bains had sufficient notice of facts that would cause a reasonably prudent person to make inquiry which would lead to the discovery of the structural defects of the foundation on or before October 13, 1977.

The record shows that in a sixteen month period beginning in late 1976, after the Bains moved into the approximately twenty year old house, and through 1977, the Bains noticed the sticking or jamming of a door in the house, a slight bulge in an interior wall, a hairline crack in the wall or paint inside the house, and a wide crack in cement of the foundation near the patio. Would discovery of this indicia of building defects and deterioration put a reasonably prudent person on notice of a substantial defect in the structure's foundation or cause such person to make inquiry which would lead to discovery of the defective foundation? The flaws, infirmities, and evidence of defects and deterioration listed do not point unerringly to a substantial foundation defect. They are consistent with the effect of age, weathering, strong winds, dampness and temperature expansion and contraction, and perhaps other causes. Discovery of flaws multiplied over a period of sixteen months and the Bains finally made inquiry which did not lead to discovery. In April of 1978, a foundation expert was consulted, after inspection the expert informed the Bains that there was no real foundation problem. Later in June of 1978, after another inspection, another expert informed them that serious defects existed in the foundation.

The Bains are not shown to have more than common knowledge and experience in building construction. The *no problem* advice of an expert in the field would ordinarily abate the concern that an occupant might have that something was wrong with a building's foundation. The evidence pointing to foundation problems is much too slight and indefinite to support the jury's verdict on the issue.

Appellants' first and second points of error are sustained and the judgment of the trial court is reversed. The case is remanded for retrial.